No. 23-70005

Iɴ ᴛʜᴇ
# United States Court of Appeals for the Fifth Circuit

ALI NASSER,

*Defendant–Appellant,*

v.

JEDIDIAH MURPHY,

*Plaintiff–Appellee.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division,
Cause No. 1:23–CV–1170

## BRIEF FOR DEFENDANT-APPELLANT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

ALI M. NASSER
Assistant Attorney General
   *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936–1400
Ali.nasser@oag.texas.gov

*Counsel for Defendant–Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Defendant–Appellant*
 Ali Nasser
 District Attorney Pro Tem

*Counsel for Defendant–Appellant*
 Ali Nasser, Assistant Attorney General
 OFFICE OF THE ATTORNEY GENERAL OF TEXAS

*Plaintiff–Appellee*
 Jedidiah Murphy

*Counsel for Plaintiff–Appellee*
 Catherine Bernhard
 Katherine Black
 Russell Hunt

s/ Ali M. Nasser
ALI NASSER
Assistant Attorney General
*Counsel for Defendant–Appellant*

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...........................................i

TABLE OF CONTENTS .............................................................................ii

TABLE OF AUTHORITIES......................................................................iv

INTRODUCTION.......................................................................................1

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE ..................................................................2

I.    Facts of the Wilhelm Kidnapping ................................................2

II.   Murphy's DNA Litigation................................................................3

STANDARD OF REVIEW........................................................................5

SUMMARY OF THE ARGUMENT ........................................................6

ARGUMENT ..............................................................................................7

I.    The Lower Court Erred By Failing to Apply a Presumption
      Against the Grant of a Stay, Given that Murphy Challenges a
      Legal Opinion from *Twelve* Years Ago. ......................................7

II.   The District Court Erred When It Found Murphy Likely to
      Succeed on the Merits................................................................. 11

III.  The Lower Court Erred in Failing to Explain What Irreparable
      Injury Murphy Will Suffer Absent a Stay of Execution. ...................... 15

      A.    The lower court failed to explain how Murphy could
            obtain DNA testing if he wins his lawsuit.............................. 15

      B.    The lower court erred in failing to explain how DNA
            testing would help Murphy prove his innocence of the
            Wilhelm kidnapping.................................................................17

      C.    The lower court erred in finding that negating the
            Wilhelm kidnapping might have affected the jury's
            decision at punishment. ......................................................... 19

IV.   The Lower Court Erroneously Gave Short Shrift to the Public's
      Interest in a Timely Enforcement of Murphy's' Criminal
      Sentence. ................................................................................ 23

CONCLUSION ....................................................................................... 25

CERTIFICATE OF SERVICE ................................................................ 27

CERTIFICATE OF COMPLIANCE WITH RULE 27(d) ........................ 28

CERTIFICATE OF COMPLIANCE WITH ECF FILING
STANDARDS ........................................................................................ 28

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012) ........................................6

*Barefoot v. Estelle*, 463 U.S. 880 (1983) .............................................5, 15

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) .....................................10, 23

*Calderon v. Thompson*, 523 U.S. 538 (1998).....................................23, 24

*Cantu v. Collins*, 967 F.2d 1006 (5th Cir. 1992)....................................13

*Cromartie v. Shealy*, 941 F.3d 1244 (11th Cir. 2019) ............................12

*District Attorney's Office for the Third Judicial District v. Osborne*, 557

    U.S. 52 (2009)........................................................................................11

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)

    ........................................................................................................12

*Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007).........................14

*Ex parte Gutierrez*, 337 S.W.3d 883 (Tex. Crim. App. 2011)...............4, 8

*Ex parte Murphy,* No. WR-70,832-05, 2023 WL 6466676 (Tex. Crim.

    App. Oct. 3, 2023)................................................................................15

*Filer v. Donley*, 690 F.3d 643 (5th Cir. 2012) .........................................6

*Garcia v. Castillo*, 431 F. App'x 350 (5th Cir. 2011)................................6

*Garcia v. Texas*, 564 U.S. 940 (2011) .....................................................13

iv

*Gomez v. United States Dist. Court*, 503 U.S. 653 (1992)........... 10, 23, 24

*Guevara v. State*, 97 S.W.3d 579 (Tex. Crim. App. 2003)......................22

*Gutierrez v. Saenz*, 141 S. Ct. 1260 (2021)...............................................18

*Gutierrez v. Saenz*, 565 F. Supp. 892 (S.D. Tex. Mar. 23, 2021) ..............9

*Gutierrez v. Saenz*, 818 F. App'x 309 (5th Cir. 2020) ...................... 18, 19

*Hill v. McDonough*, 547 U.S. 573 (2006)........................................5, 7, 10

*Hilton v. Braunskill*, 481 U.S. 770 (1987)..................................................5

*Johnson v. McCotter*, 804 F.2d 300 (5th Cir. 1986) ................................13

*Lowenfield v. Phelps*, 484 U.S. 231 (1988) ..............................................20

*Murphy v. Davis*, 901 F.3d 578 (5th Cir. 2018) ...................... 2, 3, 18, 22

*Murphy v. State*, No. AP-77,112, 2023 WL 6241994 (Tex. Crim. App.

   Sep. 26, 2023) ............................................................................ 3, 4, 16

*Nelson v. Campbell*, 541 U.S. 637 (2004)......................................5, 7, 23

*Nken v. Holder*, 556 U.S. 418 (2009).........................................................5

*Ramirez v. Collier*, 595 U.S. 411 (2022).................................................24

*Ramirez v. McCraw*, 715 F. App'x 347 (5th Cir. 2017)..........................16

*Reed v. Goertz*, 598 U.S. 230 (2023) .......................................... 14, 16, 17

*Reed v. State*, 541 S.W.3d 759 (Tex. Crim. App. 2017)..................... 18, 19

*Reese v. Livingston*, 453 F.3d 289 (5th Cir. 2006) ................................. 11

*Regents of the Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*, 482

    F.3d 372 (5th Cir. 2007) ...................................................................... 21

*Rhines v. Weber*, 544 U.S. 269 (2005) ..................................................... 24

*Rocha v. Thaler*, 626 F.3d 815 (5th Cir. 2010)........................................ 20

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) .................................. 12

*Sawyer v. Whitley*, 505 U.S. 333 (1992) ................................................. 20

*Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013)................................ 11

*Skinner v. Switzer*, 562 U.S. 521 (2011) ................................................ 12

*United States v. Salerno*, 481 U.S. 739 (1987)....................................... 13

*Utah v. Evans*, 536 U.S. 452 (2002) ........................................................ 17

*Whitaker v. Livingston*, 597 F. App'x 771 (5th Cir. 2015) ...................... 10

**Statutes**

Tex. Code Crim. Proc. art. 11.071 § 5(a)(3)............................................ 23

Tex. Code Crim. Proc. art. 37.071 § 2(b)(1)............................................ 21

Tex. Code Crim. Proc. art. 64.03 ............................................................... 3

Tex. Code Crim. Proc. art. 64.03(a)(2)(B) ................................................ 4

## INTRODUCTION

Plaintiff-Appellee Jedidiah Murphy murdered 80-year-old Bertie Cunningham by shooting her in the head, locking her in the trunk of her car, and eventually dumping her body in a creek. In 2001 a Texas jury convicted him of capital murder and sentenced him to die. Murphy was scheduled to be executed October 10, 2023. But just thirteen days from his scheduled execution, Murphy filed a civil-rights complaint in the district court challenging Texas's postconviction DNA testing statute and moved for a stay of execution. On October 6, 2023, the district court granted the stay. Defendant-Appellant now moves this Court to vacate.

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a) and Fifth Circuit Rule 8.

## STATEMENT OF THE ISSUES

1. Did the district court abuse its discretion when it failed to apply a presumption against granting a stay, given that Murphy's lawsuit has been available for twelve years?

2. Did the district court abuse its discretion when it found a likelihood of success on the merits?

1

3.   Did the district court abuse its discretion when it failed to consider how Murphy would be irreparably injured if his execution is not stayed?

4.   Did the district court abuse its discretion when it found that the public interest would be better served by staying Murphy's execution so he can litigate his claims?

## STATEMENT OF THE CASE

## I.   Facts of the Wilhelm Kidnapping

Murphy does not dispute that he was properly convicted of the capital murder of Bertie Cunningham in 2001. *Murphy v. Davis*, 901 F.3d 578, 583 (5th Cir. 2018). He does dispute, however, that he committed the 1997 Wilhelm kidnapping, which the State presented at punishment:

> Sheryl Wilhelm testified for the State that, three years before the Cunningham killing, a man briefly kidnapped her and then stole her car. After seeing a TV news report on Cunningham's murder featuring Murphy's photo, Wilhelm called the police to report Murphy as her kidnapper. She identified Murphy during a pretrial hearing and then again at trial. Wilhelm also testified at trial that she identified Murphy in a police-constructed photo lineup. The detective who conducted the photo lineup testified that Wilhelm's "was one of the better photo" identifications he ever had. According to the detective, Wilhelm said "she was virtually sure that that was the guy who abducted her."
>
> Murphy attacked Wilhelm's identification in a few ways. He called a psychologist who testified that Wilhelm's memory was tainted by the photo of Murphy she saw on the news. The

2

psychologist also pointed out prominent differences between a composite sketch, made just a week after the kidnapping, and the press-released photo of Murphy. And the psychologist added that the photo lineup was unfairly constructed; obvious differences between the mugshots reduced the odds of selection from one-in-six to one-in-three. Murphy also put on an alibi defense. Wilhelm said she had been kidnapped, escaped, and had her car stolen at 11:30 a.m. in Arlington, Texas. The day after her kidnapping, Wilhelm's car was found in Wichita Falls, Texas. In the car, the police found documents belonging to another woman [named Marjorie Ellis]. That woman had been assaulted and had her purse stolen in Wichita Falls at 8:24 p.m. on the day of Wilhelm's kidnapping. Also on the same day, Murphy clocked in for his night shift at 11:54 p.m. in Terrell, Texas. Murphy's counsel argued that Murphy did not have time to kidnap Wilhelm in Arlington, rob the other woman in Wichita Falls, and make it to work in Terrell.

*Id.* at 583–84. The jury found a reasonable probability that Murphy would be a future danger.

## II. Murphy's DNA Litigation.

On March 24, 2023, Murphy moved for touch DNA testing of physical property belonging to Ellis, which was recovered from Wilhelm's car in Wichita Falls the next day. *Murphy v. State*, No. AP-77,112, 2023 WL 6241994, at *5. (Tex. Crim. App. Sep. 26, 2023); *see also* Tex. Code Crim. Proc. art. 64.03 (statute permitting DNA testing). The trial court denied testing on the grounds that Chapter 64 of the Texas Code of

Criminal Procedure does not permit testing of evidence that only relates to the punishment phase of trial (the *Gutierrez*[1] rule). *Murphy*, 2023 WL 6241994, at *3. It held alternatively that Murphy also failed to meet the requirements of Article 64.03 because Murphy failed to show "that his motion is not filed for purposes of delaying execution of sentence or the administration of justice." *Id.*; *see also* Tex. Code Crim. Proc. art. 64.03(a)(2)(B). The Texas Court of Criminal Appeals (CCA) affirmed the judgment of the trial court, finding that both grounds for denial were not error. *Murphy*, 2023 WL 6241994, at *3–4.

On September 27, 2023, under two weeks from his execution date, Murphy filed a lawsuit under 42 U.S.C. § 1983 claiming that the CCA's interpretation of Chapter 64—that Chapter 64 DNA testing does not extend to punishment-related evidence—violates the Due Process Clause, his right to clemency, his right to access of courts, and his statutory right to counsel under 18 U.S.C. § 3599. *See generally* ECF No. 6. Murphy moved for a stay of execution to resolve that lawsuit. Over

---

[1]    *Ex parte Gutierrez*, 337 S.W.3d 883, 901 (Tex. Crim. App. 2011).

Appellant's opposition, the district court granted the stay. Appellant now moves to vacate that order.

## STANDARD OF REVIEW

"Filing an action that can proceed under § 1983 does not entitle Murphy to an order staying an execution as a matter of course." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). A request for a stay "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* (citing *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004)). Murphy must satisfy all the requirements for a stay, including a showing of a significant possibility of success on the merits. *Id.* (citing *Barefoot v. Estelle*, 463 U.S. 880, 895–96 (1983)). When a stay of execution is requested, a court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "In a capital case, the movant is not always

5

required to show a probability of success on the merits, but he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities[,] i.e., the other three factors[,] weighs heavily in favor of granting a stay." *Garcia v. Castillo*, 431 F. App'x 350, 355 (5th Cir. 2011) (cleaned up).

A district court's legal conclusions are reviewed de novo. *Filer v. Donley*, 690 F.3d 643, 646 (5th Cir. 2012). A district court's grant of a stay of execution is reviewed for abuse of discretion. *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012).

## SUMMARY OF THE ARGUMENT

Murphy waited until two weeks before his execution to challenge a statutory interpretation that has existed for twelve years. In making its equitable decision to stay execution the lower court erroneously failed to apply an equitable presumption against a stay of execution in light of this inexplicable delay. Moreover, the lower court misapplied nearly every one of the stay factors. First, it incorrectly determined that Murphy has made a likely showing of success on the merits of his lawsuit. Second, it incorrectly found Murphy will be irreparably harmed if a stay is not

granted, despite the fact that he cannot obtain DNA testing or show innocence of the death penalty even if he wins his lawsuit. And third, the lower court incorrectly determined that the public interest weighed in favor of giving Murphy more time to litigate his claims. The fact that Murphy is out of time, however, is his fault alone. Given Murphy's delay, the public's interest in the finality of judgment weighs against the issuance of a stay, not in favor of it.

## ARGUMENT

### I. The Lower Court Erred By Failing to Apply a Presumption Against the Grant of a Stay, Given that Murphy Challenges a Legal Opinion from *Twelve* Years Ago.

The Supreme Court has held that "court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584 (quoting *Nelson*, 541 U.S. at 650). As Appellant argued to the lower court, such a presumption applies with full force here. Murphy challenges the CCA's interpretation that Chapter 64 does not apply to punishment-related evidence. *See* ECF No. 6 at 9–11. But that

interpretation came about *twelve years ago*. *Gutierrez*, 337 S.W.3d at 901. At any point over the last twelve years, Murphy could have raised a § 1983 challenge to the CCA's interpretation to Chapter 64.

That is not what Murphy did, though. Instead, he waited until *thirteen days* before his execution to file this long-available civil rights lawsuit. *See* ECF No. 6. His explanation for the delay is unpersuasive. In his reply in support of a stay, Murphy contended that he was "unrepresented for nearly four years" after his federal proceedings ended. ECF No. 14 at 7. He omits several facts, though. First, that argument fails to explain his failure to pursue DNA testing before he was unrepresented. Moreover, Murphy *fired his retained counsel. See* Randy Schaffer and Richard Wetzel Affidavit (ECF No. 53), *Murphy v. Davis*, No. 3:10-cv-00163-N, (N.D. Tex. Jun. 19, 2023) ("Without treading on attorney-client privilege, suffice it to say that [in March 2019] petitioner fired them and instructed to do nothing further on his behalf as he anticipated that he would proceed with different counsel."). Despite this, Murphy never sent a single letter to any court seeking appointment of counsel, nor did he hire new counsel. With no execution date imminent,

he was apparently content to dawdle about without any attempt to pursue DNA testing or this civil rights lawsuit.

Nor did Murphy move with sufficient alacrity with new counsel. The trial court appointed him state-counsel in November 2022. Yet, Murphy filed the present suit on September 27, 2023,[2] thirteen days before his execution. In his reply brief in the lower court, Murphy disingenuously argues that he filed his § 1983 lawsuit on September 26, 2023, the same day that the CCA affirmed the denial of DNA testing. ECF No. 14 at 7. But Murphy did not need to wait on a ruling from the CCA to file his lawsuit. As he argued in his reply, *he is not attacking the judgment of the CCA. Id*. So, if Murphy is not seeking reversal of the September 26, 2023 judgment, but is instead seeking prospective declaratory and injunctive relief, why did he have to wait until September 26, 2023, to file his lawsuit?[3] His delay and his transparent

---

[2]     Murphy has claimed he filed the lawsuit on September 26, 2023. ECF No. 14 at 7. But on that date he filed the complaint as an exhibit to his motion to proceed in forma pauperis. ECF No. 1. It was not until September 27, 2023, that Murphy actually filed his complaint. ECF No. 6.

[3]     Moreover, the *Gutierrez* opinion from the Southern District of Texas that serves as a basis for Murphy's argument was issued in March 2021. *Gutierrez v. Saenz*, 565 F. Supp. 892 (S.D. Tex. Mar. 23, 2021). And this Court ordered briefing on the appeal of that order in 2022. *See Gutierrez v. Saenz*, No. 21-70009.

and contradictory explanations for the delay indicate an "obvious attempt at manipulation" that a court "must take into consideration" before granting a stay of execution. *Gomez v. United States Dist. Court*, 503 U.S. 653, 654 (1992) (per curiam)

Yet, the lower court erroneously did not apply the equitable presumption required, nor did it utter a single word about manipulative delay. The CCA has already found that Murphy's DNA litigation was done for the purposes of delay. Again, this delay yields "'strong equitable presumption' that no stay should be granted." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 n.5 (2019); *see also Whitaker v. Livingston*, 597 F. App'x 771, 774 (5th Cir. 2015) ("This court has clearly held that waiting until an execution date is set or until some point closer to execution would 'serve no purpose but to further delay justice.'"). And the district court "can and should protect [Texas] from dilatory or speculative suits" in the last-minute litigation context. *Hill*, 547 U.S. 585. The lower court's disregard of such well-established precedent is clearly reversible error.

For these reasons, this stay is thus a flagrant and egregious abuse of discretion. This Court should follow the Supreme Court's explicit

10

commands and vacate the district court's decision. *Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir. 2013) ("As we read *Hill*, a plaintiff cannot wait until a stay must be granted to enable him to develop facts and take the case to trial—not when there is no satisfactory explanation for the delay." (quoting *Reese v. Livingston*, 453 F.3d 289, 291 (5th Cir. 2006)).

## II.   The District Court Erred When It Found Murphy Likely to Succeed on the Merits.

Murphy's lawsuit, in substance, is that Chapter 64's exclusion of punishment-related evidence is a barrier to a capital inmate's ability to show innocence of the death penalty under article 11.071 § 5(a)(3) of the Texas Code of Criminal Procedure. ECF No. 16 at 5. Murphy argues that the right to show he is innocent of the punishment of death under § 5(a)(3) establishes a liberty interest. And he therefore contends that denying him DNA testing for punishment related evidence violates that liberty interest under *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 68 (2009).[4]

---

[4]   By confining its analysis to the *Gutierrez* opinion, the lower court seemingly only granted the stay on the ground that Murphy's procedural due process claim might be meritorious, and therefore did not grant a stay based on his other arguments: that the CCA's interpretation of Chapter 64 denies him a right to

The lower court committed two errors in its analysis that Murphy had a substantial likelihood of success on the merits of this claim. First, it applied the law as it *might be*, not as it is. Second, it construed Murphy's claim as if it were an as-applied challenge, which would be impermissible under the *Rooker/Feldman*[5] doctrine.

First, the lower court's analysis cites to *Gutierrez*, in which Gutierrez sought the same declaratory relief as Murphy. ECF No. 16 at 5. With no analysis as to the actual merits of such a claim, the lower court simply found Murphy's claim to be a "live issue" before this Court. *Id.* But, while perhaps a live issue, the law as it stands does not afford Murphy relief: "[E]very court of appeals to have applied the *Osborne* test to a state's procedure for postconviction DNA testing has upheld the constitutionality of it." *See Cromartie v. Shealy*, 941 F.3d 1244, 1252 (11th Cir. 2019) (quoting *Skinner v. Switzer*, 562 U.S. 521, 525 (2011)). This Court has long made clear that "[t]he [Supreme] Court's grant of

---

clemency, access to courts, and § 3599 counsel. Therefore, Appellant does not take up those matters here.

[5]    *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

certiorari in a capital case does not cause us to deviate from circuit law, nor is it grounds for a stay of execution." *Cantu v. Collins*, 967 F.2d 1006, 1012 n.10 (5th Cir. 1992) (citing *Johnson v. McCotter*, 804 F.2d 300, 301 (5th Cir. 1986)). Nor should a pending appeal of non-binding district court judgment from another judicial district. *See, e.g., Garcia v. Texas*, 564 U.S. 940, 941 (2011) ("Our task is to rule on what the law is, not what it might eventually be.").

Second, the lower court erred by treating Murphy's complaint as an as-applied challenge to Texas statute. Murphy's complaint purports to be a facial challenge to Texas statute on the procedural due process ground recognized in *Osborne*. ECF No. 6 at 9–11. But, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The lower court, however, did not conduct this analysis. Instead, it only considered how the statute, *as applied to Murphy*, might deprive him of certain rights:

> If these procedures were "fundamentally inadequate" to protect Murphy's right to seek post-conviction DNA testing

> and state habeas relief, offending "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," they would be unconstitutional.

ECF No. 16 at 4.

But, of course, Murphy cannot raise an as-applied challenge to a state-court decision in federal district court. *See Reed v. Goertz*, 598 U.S. 230, 235 (2023) (explaining that the *Rooker/Feldman* doctrine "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments."). The lower court's analysis at no point addressed the primary question: Whether there is "no set of circumstances" under which Chapter 64 and § 11.071 § 5(a)(3) could ever be constitutional.

And *had* the lower court done the correct analysis, it would have had to wrestle with the fact that Murphy cannot meet his burden under *Salerno*. Applicants may certainly avail themselves of their rights under § 5(a)(3) without DNA testing. *See Ex parte Blue*, 230 S.W.3d 151, 162–63 (Tex. Crim. App. 2007) (holding § 5(a)(3) does not require clear and convincing evidence *at the threshold* that no rational factfinder would answer at least one of the special issues in the State's favor; instead, only

a threshold presentation of facts that, if true, would be sufficient to show innocence of the death penalty is required to be allowed to be proceed to the merits).[6] Thus, Murphy's facial challenge fails.

For these reasons, the lower court's determination that Murphy can show a likelihood of success on the merits was an abuse of discretion.

## III.  The Lower Court Erred in Failing to Explain What Irreparable Injury Murphy Will Suffer Absent a Stay of Execution.

To warrant a stay, Murphy must show a "likelihood that irreparable harm will result if that decision is not stayed." *Barefoot*, 463 U.S. at 895. In granting the stay of execution, the lower court, without any explanation, found "irrevocable harm that would result if this live issue were not first adjudicated by the courts." ECF No. 16 at 6.

### A.  The lower court failed to explain how Murphy could obtain DNA testing if he wins his lawsuit.

---

[6]      In fact, Murphy just recently raised several § 5(a)(3) arguments in a subsequent habeas application challenging his death sentence under § 5(a)(3). *Ex parte Murphy,* No. WR-70,832-05, 2023 WL 6466676, at *1 (Tex. Crim. App. Oct. 3, 2023). While that application was dismissed, *id.* at *1, it still underscores the fact that subsequent claims may be presented under § 5(a)(3) without DNA testing.

Murphy seeks injunctive and declaratory relief against Appellant enjoining him from not arguing the *Gutierrez* rule in future DNA proceedings. ECF No. 6 at 13. But even assuming such relief could be granted,[7] the lower court never explained why Appellant could not simply oppose DNA testing on the basis that Murphy seeks it for the purpose of unreasonable delay. No relief sought by Murphy would preclude Appellant from taking *that* position in a future DNA-testing proceeding. And, given that the CCA has already found that Murphy failed to show his first Chapter 64 motion was not made for the purposes of unreasonable delay, it follows that he would fail to show otherwise in a second Chapter 64 motion. *Murphy*, 2023 WL 6241994, at *5.

Murphy's second argument fares no better. In his reply in the lower court, he cites to *Reed* to argue that Defendants "may agree to a future request for DNA testing, should this Court rule in Mr. Murphy's favor."

---

[7]     Surely, the lower court cannot enjoin Appellant from taking a position in a state-court proceeding. Such federal overreach would be tantamount to a federal district court issuing mandamus relief against a state actor. *See Ramirez v. McCraw*, 715 F. App'x 347, 350 (5th Cir. 2017) (finding the district court "accurately analyzed" the plaintiff's request for "an injunction requiring the defendants to release the biological material on which he asks for DNA testing" as tantamount to an impermissible writ of mandamus). Even *Reed* did not purport to stand for such an astounding proposition. *See* 598 U.S. at 234.

ECF No. 14 at 6. But the Supreme Court in *Reed* conditioned this language on a situation in which "a federal court concludes that Texas's post-conviction DNA testing procedures violate due process, [such] that [a] court order would eliminate the state prosecutor's justification for denying DNA testing," finding that, "[i]t is 'substantially likely' that the state prosecutor would abide by such a court order." 598 U.S. at 234 (citing *Utah v. Evans*, 536 U.S. 452, 464 (2002)). But in this case, the declaratory judgment and injunction sought by Murphy *would not* "eliminate the state prosecutor's justification for denying DNA testing" because Appellant could justify his opposition through the unreasonable delay requirement of Chapter 64.

The lower court completely skipped the causal connection between the merits of Murphy's lawsuit and his entitlement to DNA testing under Chapter 64. ECF No. 6 at 5. Such a failure to meaningfully engage with the irreparable injury factor was an abuse of discretion.

**B.    The lower court erred in failing to explain how DNA testing would help Murphy prove his innocence of the Wilhelm kidnapping.**

Murphy claims that, if touch DNA on Ellis's property revealed another perpetrator, then that perpetrator must be the person who kidnapped Wilhelm. *See Murphy*, 901 F.3d at 583–84. This Court has previously held that, where DNA results would not lead to relief, a pending § 1983 claim attacking a DNA-testing statute is not ground for a stay of execution. *Gutierrez v. Saenz*, 818 F. App'x 309, 312–13 (5th Cir. 2020), *vacated on other grounds by Gutierrez v. Saenz*, 141 S. Ct. 1260, 1261 (2021).[8] Conversely, the lower court here engaged in no such analysis. In conclusory fashion, it only stated that "it is difficult for the Court to conclude that the negation of this evidence would not have affected the jury's decision in the punishment phase." ECF No. 16 at 5.

Such a bare assertion cannot survive scrutiny. The presence of another's touch DNA on Ellis's property would not be exculpatory given the "ubiquity" of touch DNA. *Reed v. State*, 541 S.W.3d 759, 771 (Tex. Crim. App. 2017); *see also id*. at 777 (describing how epithelial cells from a person can be left by another person based on an "exchange principle").

---

[8]    In *Gutierrez*, the Supreme Court explicitly vacated the order of the Fifth Circuit and remanded for consideration of Gutierrez's spiritual advisor claims, *not* his DNA-testing challenge. *Gutierrez*, 141 S. Ct. at 1261.

Thus, assuming touch DNA were found on the personal belongings, they could have come from Ellis, another person who touched Ellis's belongings, or even another person whose epithelial cells were transferred to Ellis before Ellis deposited them on her own belongings.[9] *See id*.

The lower court's complete abdication of any analysis as to the materiality of the sought evidence was akin to abdication of the irreparable injury factor altogether. Without such an analysis, *anyone* raising a facial challenge under *Gutierrez* could be entitled to a stay of execution regardless of how attenuated their DNA request is from any realistic claim for relief. The equities at play here require more. *See Gutierrez*, 818 F. App'x at 312–13.

**C.    The lower court erred in finding that negating the Wilhelm kidnapping might have affected the jury's decision at punishment.**

---

[9]    Moreover, Murphy fails to explain how the lack of his touch-DNA being on the property would be exculpatory. Many perpetrators wear gloves or wipe down items in an effort to avoid detection.

In addition, to failing to explain how touch DNA would exculpate Murphy, the lower court also failed to correctly assess the impact of such exculpatory evidence on Murphy's punishment.

As explained by this Court, § 5(a)(3) adopted *Sawyer v. Whitley*, 505 U.S. 333 (1992), such that the subsection only permits claims that one is "ineligible for the death penalty" such as those who are intellectually disabled or were under eighteen years old at the time of the capital offense. *Rocha v. Thaler*, 626 F.3d 815, 826–27 (5th Cir. 2010). Conversely, a claim premised on evidence that might *persuade* a jury on the sentence of death does not amount to a gateway claim under § 5(a)(3):

> The quality of the mitigation evidence the petitioner would have introduced at sentencing has no bearing on his claim of actual innocence of the death penalty. Evidence that might have persuaded the jury to decline to impose the death penalty is irrelevant under *Sawyer*. The only question is whether the petitioner was eligible for the death penalty.

*Id.* at 825–26.

Analogous to the matter of mitigation, the future-dangerousness finding is a matter of jury discretion, not categorical eligibility for the death penalty. Tex. Code Crim. Proc. art. 37.071 § 2(b)(1); *see also Lowenfield v. Phelps*, 484 U.S. 231, 245 (1988) (explaining that the future

20

danger special issue allows "the jury to consider the mitigating aspects of the crime and the unique characteristics of the perpetrator, and therefore sufficiently provided for jury discretion."). Thus, evidence rebutting future dangerousness is the very type of "[e]vidence that might have persuaded a jury to decline to impose the death penalty" which, under Circuit precedent, is "irrelevant under *Sawyer*" and, by extension irrelevant under § 5(a)(3). The lower court's misapprehension that exculpatory evidence related to the Wilhelm kidnapping could warrant relief for Murphy under § 5(a)(3) is an abuse of discretion. *Regents of the Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 380 (5th Cir. 2007) ("Where a district court premises its legal analysis on an erroneous understanding of governing law, it has abused its discretion.")

The lower court also erred when it found it "difficult" to conclude that negation of the Wilhelm kidnapping would not have affected the future dangerousness finding. Even assuming that a claim rebutting an extraneous offense could theoretically meet the requirements of § 5(a)(3), *Rocha* notwithstanding, Murphy could not do so solely by rebutting the Wilhelm kidnapping. This Court summarized the aggravating evidence

21

against Murphy, including his violent history of threatening to harm a coworker, holding a gun to a woman's head and asking if she was "afraid to die," and abusing his live-in girlfriend. *Murphy*, 901 F.3d at 583. Moreover, Murphy's results on the Minnesota Multiphasic Personality Inventory-II (MMPI-2) test revealed a personality profile described as impulsive, temperamental, manipulative, and potentially assaultive. *Id.* at 585. And, of course, Murphy's senseless and callous murder of defenseless eighty-year-old Bertie Cunningham was the most aggravating evidence of all. *Id.* at 583. Under Texas law, the facts of the crime alone can be enough to "support an affirmative finding to the future dangerousness special issue." *Guevara v. State*, 97 S.W.3d 579, 581 (Tex. Crim. App. 2003). In fact, it was *this very Court* that said, "the State put on significant other evidence to show Murphy's future dangerousness besides the Wilhelm kidnapping." *Murphy*, 901 F.3d at 598. Thus, even if Murphy could get DNA testing, and even if that testing rebutted the Wilhelm kidnapping, it would still come up short of showing, by clear and convincing evidence, that *no rational juror* could have ever found a

22

probability that Murphy would be a future danger. *See* Tex. Code Crim. Proc. art. 11.071 § 5(a)(3).

For these reasons, the lower court's analysis of the irreparable harm factor was an abuse of discretion.

## IV. The Lower Court Erroneously Gave Short Shrift to the Public's Interest in a Timely Enforcement of Murphy's' Criminal Sentence.

The State and crime victims have a "powerful and legitimate interest in punishing the guilty." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (citation omitted). And "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew*, 139 S. Ct. at 1133 (quotation omitted); *see Nelson*, 541 U.S. at 648 ("a State retains a significant interest in meting out a sentence of death in a timely fashion"); *Gomez*, 503 U.S. at 654 ("[e]quity must take into consideration the State's strong interest in proceeding with its judgment"). Once post-conviction proceedings "have run their course . . . finality acquires an added moral dimension. Only with an assurance of real finality can the State execute its moral judgment in a case. Only with real finality can the victims of crime move forward

knowing the moral judgment will be carried out." *Calderon*, 523 U.S. at 556.

The lower court paid token reference to these authorities, before concluding that the "public interest will best be served by allowing time for the fair adjudication of the important issues raised in Murphy's complaint[.]" ECF No. 16 at 6. That conclusion was clearly erroneous, given that Murphy has been allowed *more than a decade* to fairly adjudicate these issues and that he failed to do so. The lower court inexplicably ignored that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of a sentence of death." *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). It also ignored that  "last-minute claims arising from long-known facts, and other 'attempt[s] at manipulation' can provide a sound basis for denying equitable relief in capital cases." *Ramirez v. Collier*, 595 U.S. 411, 434 (2022) (quoting *Gomez*, 503 U.S. at 654). And finally, it ignored that Murphy's last-minute lawsuit has all the red flags of such manipulative, abusive, and dilatory tactics.

24

Instead of heeding these authorities, the lower court used Murphy's delay to find the public-interest factor weighed *in his favor*—specifically by concluding that the public interest lies in staying his execution so that he could pursue a lawsuit he didn't bother filing until two weeks before his execution. ECF No. 16 at 6. The lower court's rationale cannot be squared with precedent. A capital inmate who waits until the eleventh hour to raise long-available claims should not get to complain that he needs more time to litigate them. Finding otherwise was an abuse of discretion.

## CONCLUSION

For the above reasons, the Defendant-Appellant requests that this Court vacate the district court's order staying Murphy's execution.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Ali Nasser
\*ALI NASSER
Assistant Attorney General
District Attorney Pro Tem
Texas Bar No. 24098169

P. O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936–1400
Fax: (512) 320–8132
Email: Ali.Nasser@oag.texas.gov

ATTORNEYS FOR DEFENDANT

\*Attorney-in-charge

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant-Appellant's Motion to Vacate Stay of Execution was served by email on this the 7th day of October 2023 to the following:

Catherine Clare Bernhard
Law Office of Catherine Clare Bernhard
P.O. Box 506
Seagoville, TX 75159
972-294-7262
Fax: 972-421-1604
Email: cbernhard@sbcglobal.net

Katherine Froyen Black
Attorney At Law
205 Blue Ridge Trail
Austin, TX 78746
415-847-6127
Email: kfroyen@gmail.com

Russell David Hunt, Jr.
Russell D. Hunt, Jr. Attorney at Law
310 South Austin Avenue
Georgetown, TX 78626
(512)474-5114
Fax: (512)857-0746
Email: admin@russhuntjrlaw.com

s/ Ali Nasser
ALI NASSER
Assistant Attorney General

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for Plaintiff-Appellee Jedidiah Murphy, and Plaintiff-Appellee is opposed to the relief requested in this motion.

s/ Ali Nasser

ALI NASSER
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE WITH RULE 27(d)

I certify that this motion complies with the typeface and length requirements of Federal Rule of Appellate Procedure 27(d). It contains 5,171 words, Microsoft Word for Office 365, Century Schoolbook, 14 point font.

s/ Ali Nasser

*ALI NASSER
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARDS

I do hereby certify that: (1) all required privacy redactions have been made; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus scanning program and is free of viruses.

s/ Ali Nasser

ALI NASSER
Assistant Attorney General
