No. 23-70005

_____

IN THE
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

**ALI NASSER,**

**Defendant-Appellant,**

**v.**

**JEDIDIAH MURPHY,**

**Plaintiff-Appellee.**

_____

On appeal from the United States District Court for the Western District of Texas,
Austin Division, Cause No. 1:23cv1170

_____

**BRIEF OF PLAINTIFF-APPELLEE**
_____

**THIS IS A CAPITAL CASE**

**EXECUTION WAS SCHEDULED FOR OCTOBER 10, 2023, PRIOR TO A
STAY BEING GRANTED BY THE UNITED STATES DISTRICT COURT**

_____

Catherine Clare Bernhard                Katherine Froyen Black
Texas Bar No. 022165755                 Texas Bar No. 24099910
P.O. Box 506                            205 Blue Ridge Trail
Seagoville, TX 75159                    Austin, Texas 78746
972-294-7262                            415-847-6127
cbernhard@sbcglobal.net                 kfroyen@gmail.com
*Counsel for Appellee*

# CERTIFICATE OF INTERESTED PERSONS

**Plaintiff-Appellee**

Jedidiah Isaac Murphy

**Counsel for Plaintiff-Appellee**

Catherine Clare Bernhard

Katherine Froyen Black

**Defendants-Appellants**

Ali Nasser, Assistant Attorney General, prosecutor *pro tem*

**Counsel for Defendants-Appellants**

Ken Paxton, Attorney General of Texas

Edward L. Marshall, Chief, Criminal Appeals Division

Brent Webster, First Assistant Attorney General

Josh Reno, Deputy Attorney General for Criminal Justice

Ali M. Nasser, Assistant Attorney General, *counsel of record*
PO Box 12548, Capitol Station
Austin, Texas 78711
512-936-1400
Ali.nasser@oag.texas.gov

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

TABLE OF CONTENTS .......................................................................................... iii

TABLE OF AUTHORITIES ...................................................................................... v

JURISDICTIONAL STATEMENT ........................................................................... 1

INTRODUCTION ....................................................................................................... 1

STATEMENT OF THE ISSUES ................................................................................ 2

STATEMENT OF FACTS AND CASE .................................................................... 3

SUMMARY OF THE ARGUMENT ......................................................................... 8

ARGUMENT .............................................................................................................. 10

   A.  Standard of Review for This Court's Consideration of the District Court's Grant of a Stay ........................................................................................................ 10

   B.  The District Court Made a Factual Finding That Mr. Murphy's Desired DNA Testing Was Relevant To Disprove "What Might Be Regarded As The State's Strongest Evidence of Future Dangerousness." .................................................... 11

   C.  Mr. Murphy's DNA Claim Raises a Substantial Case on the Merits ............. 11

      a.  The district court did not abuse its discretion by considering persuasive authority from another Federal District Court, and the pendency of an appeal to this Court on the exact same issue ................................................................... 12

      b.  Controlling authority from the United States Supreme Court holds that the district court did not violate the *Rooker/Feldman* doctrine .............................. 14

   D.  The District Court Did Not Abuse Its Discretion When It Found that Murphy Demonstrated the Possibility of Irreparable Injury ............................................ 15

   E.  The Balance of the *Nken* Factors Weighs Heavily in Mr. Murphy's Favor, and the District Court Did Not Abuse Its Discretion in So Finding .................... 18

   F.  Appellant's Issue One is Unpreserved and Ignores Controlling Authority ... 19

   G.  Defendant Nasser Cannot Appeal This Interlocutory, Non-final Order ........ 21

a.    Appellant has forfeited his legal argument that the district court's order is an injunction. ....................................................................................21

b.    The district court did not issue an injunction. ...............................................22

c.    The Order cannot be appealed under any jurisdictional theory as it is not final under 28 U.S.C. § 1291 nor does it satisfy the collateral order doctrine ..23

CONCLUSION .........................................................................................29

CERTIFICATE OF SERVICE ..............................................................31

CERTIFICATE OF COMPLIANCE ....................................................32

# TABLE OF AUTHORITIES

## Cases

*Abney v. United States*, 431 U.S. 651 (1977) ...........................................................25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................3

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) ....................................................3, 10

*Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016) .............................................18

*Black v. N. Panola Sch. Dist.*, 461 F.3d 584 (5th Cir. 2006)................................21

*Blue v. State*, 125 S.W.3d 491 (Tex. Crim. App. 2003) ........................................17

*Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) ...........................................13

*Cardoni v. Prosperity Bank*, 805 F.3d 573 (5th Cir. 2015)...................................10

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)....................................................23

*Clark v. Johnson*, 278 F.3d 459 (5th Cir. 2002) ...................................................24

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)................... 24, 25, 26

*Crutsinger v. Davis*, 930 F.3d 705 (5th Cir. 2019).................................................19

*Cunningham v. Hamilton County*, 527 U.S. 198 (1999). ........................................29

*Def. Distrib. v. Platkin*, 55 F.4th 486 (5th Cir. 2022)................................................13

*Di Bella v. U.S.*, 369 U.S. 121 (1962)....................................................................28

*Digital Equip. Corp. v. Desktop Direct*, 511 U.S. 863 (1994) ...............................28

*EEOC v. Kerrville Bus Co.,* 925 F.2d 129 (5th Cir. 1991).....................................26

*Evans v. Bennett*, 440 U.S. 1301 (Rehnquist, J., granting stay of execution) .........18

*Ex parte Murphy*, No. WR-70,832-01, 2009 Tex. Crim. App. Unpub. LEXIS 227 (Mar. 25, 2009). ..............................................................................................6

*Ex parte Murphy*, No. WR-70832-02 (Tex. Crim. App. March 21, 2012) ..............6

*FDIC. v. Mijalis*, 15 F.3d 1314 (5th Cir. 1994)....................................................22

*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981) ....................... 25, 27

*Gutierrez v. Saenz*, No. 21-70009 (pending) ................................................. 2, 7, 12

*Hill v. McDonough*, 547 U.S. 573 (2006)........................................................ 19, 20

*Hollywood Motor Car Co., Inc.*, 458 U.S. 263 (1982)............................................28

*Indus. v. Carpenter,* 558 U.S. 100 (2009)..............................................................27

*Johnson v. Jones*, 515 U.S. 304 (1995) .................................................................26

*Leverette v. Louisville Ladder Co.*, 183 F.3d 339 (5th Cir. 1999) .........................22

*Machete Prod. LLC v. Page*, 809 F.3d 281 (5th Cir. 2015) ....................................3

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)..............................................................28

*Murphy v. Davis*, 901 F.3d 578 (5th Cir. 2018)........................................................3

*Murphy v. Davis*, 901 F.3d 578 (5th Cir. 2018), cert. denied , 139 S.Ct. 1263 (2019)........................................................................................6

*Murphy v. State*, No. AP-77,112 (Tex. Crim. App., Sept. 26, 2023) ......................7

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982)................................................................26

*Nken v. Holder*, 556 U.S. 418 (2009) ................................ 11, 15, 18, 22, 23, 25, 26

*O'Bryan v. Estelle*, 691 F.2d 706 (5th Cir. 1982)............................................ 11, 18

*Ramirez v. Collier*, 142 S. Ct. 1264 (2022) .......................................................22

*Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523 (5th Cir. 2020).................10

*Reed v. Goertz*, 143 S. Ct. 955 (2023) ................................................... 9, 14, 15, 21

*Ring v. Arizona*, 536 U.S. 584 (2002)...................................................................17

*Rocha v. Thaler*, 626 F.3d 815 (5th Cir. 2010)....................................................17

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)..............................................14

*Santos-Sanchez v. United States*, 548 F.3d 327 (5th Cir. 2008), *vacated on other grounds*, 559 U.S. 1046 (2010) ...............................................................3, 10

*Scripps-Howard Radio, Inc.* v. *FCC*, 316 U.S. 4 (1942)........................................23

*Shumaker v. Guzman*, No. 22-40409, 22-40496, 2023 U.S. App. LEXIS 2578 (5th Cir. Feb. 1, 2023) .......................................................................................3

*Singleton v. Wulff*, 428 U.S. 106 (1976) ..............................................................22

*Skinner v. Switzer*, 562 U.S. 521 (2011)..............................................................14

*Swint v. Chambers Cty. Comm'n*, 514 U.S. 35 (1995). .................................. 24, 26

*Texas v. United States*, 50 F.4th 498 (5th Cir. 2022)...................................... 10, 18

*Tracy v. Lumpkin*, 43 F.4th 473 (5th Cir. 2022) ..................................................27

*U.S. v. MacDonald*, 435 U.S. 850 (1978)..............................................................28

*United States v. Harris*, 597 F.3d 242 (5th Cir. 2010). ............................. 10, 11, 18

*United States v. Ryan,* 402 U.S. 530 (1971) ........................................................27

*United States v. Trudeaux*, No. 23-50132, 2023 U.S. App. LEXIS 25079 (5th Cir. Sep. 21, 2023) ........................................................................................3, 10

*United States v. Wampler*, 624 F.3d 1330 (10th Cir. 2010) ..................................28

*Utah v. Evans*, 536 U.S. 452 (2002) .....................................................................16

*Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988)..............................................29

**Statutes**

18 U.S.C. §3626(a)(2)............................................................................................22

28 U.S.C. § 1291 ................................................................... 23, 24, 27, 28, 29

28 U.S.C. § 1292(a) ..................................................................21

28 U.S.C. § 1292(b) ..................................................................24

42 U.S.C. § 1983 ............................................................... 1, 7, 8

Chapter 64 of the Texas Code of Criminal Procedure.......................7

Texas Code of Crim. Proc. Art. 11.071 § 5(a)(3) .....................12

Texas Code of Crim. Proc. Art. 37.071 § 2(b)(1).....................3

## Rules

Fed. R. Civ. P. 12(b)(6)............................................................3

Fed. R. Civ. P. 65 ............................................................. 21, 22

Fed. R. Civ. P. 8(a)(2) .............................................................3

## JURISDICTIONAL STATEMENT

Appellee respectfully takes the position that this Court lacks appellate jurisdiction to hear this matter. This appeal is not taken from a final order or judgment; and no applicable jurisdictional statute permits appeal from the interlocutory order below.

Appellee timely files this Brief, in accordance with this Court's instruction allotting him 19 hours to do so.

## INTRODUCTION

Mr. Murphy, whose execution is scheduled for October 10, 2023, filed a federal civil rights lawsuit seeking access to DNA testing of evidence in the State's possession–evidence that could exonerate Mr. Murphy of an allegation that formed the crux of the State's case against him at sentencing: a highly-aggravated, unadjudicated, prior kidnapping and robbery.

Although Texas law maintains procedural pathways for Mr. Murphy to use this favorable evidence to raise a new postconviction writ in state court, it fails to provide for the threshold DNA testing he needs in order to traverse them. Accordingly, he brought a civil rights action under 42 U.S.C. § 1983, seeking access to the DNA testing he desperately needs to prove his innocence of the death penalty.

Another panel of this Court is currently considering an identical due process claim, argued just two weeks ago after full briefing, supplemental authority

submissions, and a request from the panel for the parties to address an additional issue at oral argument. *Gutierrez v. Saenz*, No. 21-70009. That appeal follows the United States District Court for the Southern District of Texas reaching the merits of this claim and finding a federal constitutional violation – again, identical to the one Mr. Murphy raises.

## STATEMENT OF THE ISSUES

The district court did not abuse its discretion when it found that Mr. Murphy has presented a substantial case on the merits and is entitled to a stay, finding that:

> In addition to the fact that a sister court has recently issued a declaratory judgment on the very claims before this Court, which are now a live issue before the Fifth Circuit Court of Appeals, the evidence at issue in this writ pertains to what might be regarded as the State's strongest evidence of future dangerousness. As such, it is difficult for the Court to conclude that the negation of this evidence would not have affected the jury's decision at the punishment phase.

Dkt. 16, at 5. This appeal presents the following issues:

(1) Whether the district court abused its discretion by considering persuasive authority from another Federal District Court, and the pendency of an appeal to this Court on the exact same issue, in determining that important issues raised in a prisoner's civil rights complaint about access to DNA evidence that would tend to prove innocence of the death penalty deserved further consideration, warranting a stay of Appellee's imminent execution?

(2) Whether this Court has jurisdiction to hear this appeal?

2

# STATEMENT OF FACTS AND CASE[1]

Mr. Murphy was convicted of capital murder and sentenced to death by a Dallas County jury in 2001, for the murder of Bertie Cunningham. To secure a death sentence for Mr. Murphy, the State had to prove beyond a reasonable doubt not only that he was guilty of Mrs. Cunningham's murder, but also that, beyond a reasonable doubt, "there [was] a probability that [he] would commit criminal acts of violence that would constitute a continuing threat to society." Texas Code of Crim. Proc. Art. 37.071 § 2(b)(1) ("future dangerousness"). The primary evidence the State introduced against Mr. Murphy on the "future dangerousness" special issue was testimony from the victim of a prior, unadjudicated kidnapping and robbery ("the Wilhelm kidnapping"), which occurred several years prior. Sheryll Wilhelm testified

---

[1] Appellant's statement of facts was drawn verbatim from this Court's 2018 opinion affirming a district court denial of two federal habeas claims on appeal in *Murphy v. Davis*, 901 F.3d 578, 583 (5th Cir. 2018). That is not the proper set of facts to consider in evaluating this civil rights lawsuit, however. Instead, the Court should "view[] the well-pled facts in the light most favorable to the nonmovant," *Shumaker v. Guzman*, No. 22-40409, 22-40496, 2023 U.S. App. LEXIS 2578, at *3 (5th Cir. Feb. 1, 2023) (quoting *Machete Prod. LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015), taking them as true. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (in considering lift of a preliminary injunction, as with motion to dismiss, Court accepts all well-pleaded facts as true and views in light most favorable to non-moving party.). Mr. Murphy, in compliance with Rules 8(a)(2) and 12(b)(6), filed a sufficient statement of his claims, including underlying facts, to showing he is entitled to relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). To the extent that factual inquiry is needed at this juncture, facts should be limited to the Complaint, taken as true, and viewed in the light most favorable to Mr. Murphy.

Furthermore, the district court is entitled to deference as to its factfinding. As stated in the standard of review *infra*, the district court's factual findings should not be disturbed unless they are clearly wrong. *United States v. Trudeaux*, No. 23-50132, 2023 U.S. App. LEXIS 25079, at *2 (5th Cir. Sep. 21, 2023) (quoting *Santos-Sanchez v. United States*, 548 F.3d 327, 330 (5th Cir. 2008), *vacated on other grounds*, 559 U.S. 1046 (2010)).

that a man forced her into her car in a parking lot, choked her, made her get on the floor of the car, and drove away with her. She escaped by leaping from the moving car onto the highway as her assailant kept driving.

The same day, shortly after Ms. Wilhelm escaped from her attacker, the same man attacked 69-year-old Marjorie Ellis and stole her purse during a struggle in Wichita Falls. Ms. Wilhelm's car, containing property belonging to Ellis, was found abandoned on the side of a highway in Wichita Falls the next morning.

Over three years later, Ms. Wilhelm saw Mr. Murphy's picture on television, in connection with his arrest for the kidnapping and killing of Mrs. Cunningham. She called Detective John Stanton of the Arlington Police Department, who showed Ms. Wilhelm a six-photo lineup. She selected a picture of Mr. Murphy.

Ms. Wilhelm's emotional and impactful testimony was the focal point of the State's argument that Mr. Murphy would be dangerous in the future, even while incarcerated. Wilhelm described not only her attacker and his actions that night, but vividly spoke about fearing for her life, praying for her life (until her kidnapper threateningly ordered her to stop praying), and her choice to make the terrifying leap from a car speeding down the highway. As to her testimony of Mr. Murphy, she had no doubt he was her assailant when she identified him in the photospread and in court, despite failing to identify him at a pretrial suppression hearing.

In closing argument, the State used the Wilhelm kidnapping to present a false picture of Mr. Murphy as a cold, serial kidnapper who preyed on women. They also injected the Wilhelm allegations into multiple witness examinations.

Because of its striking similarity to the capital crime, the Wilhelm kidnapping–and, to a lesser extent, the Ellis robbery–was the critical factor in the jury's determination that Mr. Murphy was a future danger. But Mr. Murphy has steadfastly maintained his innocence for two decades. In addition to the obvious problems with Ms. Wilhelm's identification, later investigation uncovered important evidence the State failed to disclose about the Wilhelm robbery, including significant, additional reasons to doubt Ms. Wilhelm's identification. The lead detective who conducted the photo lineup testified that Wilhelm's "was one of the better photo" identifications at trial that he ever had, and that Wilhelm had said "she was virtually sure" that Wilhelm was the person who abducted her. But post-conviction counsel discovered that Wilhelm had expressed uncertainty to the detective, and to her mother, over her identification, and the detective harbored his own doubts about the evidence linking Murphy to that crime.

Mr. Murphy attempted to get post-conviction relief from these revelations, but to no avail. Murphy's state habeas litigation ended in March 2012, and his federal

habeas litigation ended in February 2019.[2]  Both jurisdictions procedurally barred his claims concerning exculpatory evidence in the unadjudicated crimes.[3]

Sheryl Wilhelm's testimony about the uncharged kidnapping was more than just a piece of State's evidence. The kidnapping was the crux of the State's case for future dangerousness. Combined with an instruction that Mr. Murphy would be eligible for parole in 40 years if sentenced to life, Ms. Wilhelm's testimony virtually assured a death sentence for Mr. Murphy, in spite of a partial alibi and Ms. Wilhelm's faulty identification three years after the fact.

The remaining evidence at trial was substantially different from the testimony about the Wilhelm kidnaping and the Ellis robbery and was not nearly as damaging to Mr. Murphy's case at punishment. The rest of the State's evidence at punishment included property crimes (a probated sentence for burglary of a habitation and care in 1994 and for auto theft in 1995); evidence that Mr. Murphy served a 2-day sentence and a fine for possessing marijuana in 1996; testimony from a high-school classmate that Mr. Murphy brandished a gun in her presence after leaving a high school graduation party where underage attendees were drinking (no charges filed

---

[2] *See Ex parte Murphy*, No. WR-70832-02 (Tex. Crim. App. March 21, 2012) (per curiam) (state habeas litigation).This was an attempted subsequent state post-conviction writ. Mr. Murphy's initial state post-conviction litigation ended in March 2009. *Ex parte Murphy*, No. WR-70,832-01, 2009 Tex. Crim. App. Unpub. LEXIS 227 (Mar. 25, 2009). His direct appeal had ended in 2003. Murphy v. State, 112 S.W.3d 592 (Tex. Crim. App. 2003). *See also Murphy v. Davis*, 901 F.3d 578 (5th Cir. 2018), cert. denied , 139 S.Ct. 1263 (2019) (federal habeas litigation).

[3] *Supra,* Note 2; 3:10-cv-163N, Dkt. No. 37 (N.D.Tex.) (adopting Docket Entry 35).

and police never called); evidence that Mr. Murphy had assaulted his girlfriend and a companion in a domestic dispute in 1997 during a mental health crisis (charges were dismissed); and evidence that Mr. Murphy cursed and threatened a coworker during an argument in 2000 (no charges filed).

The prosecution presented neither expert testimony about future dangerousness, nor victim impact testimony from Mrs. Cunningham's family.

## Mr. Murphy' s DNA Litigation

On March 24, 2023, Mr. Murphy filed a Motion for Post Conviction Forensic DNA Testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. The State filed an opposition. On April 21, 2023, the trial court denied the motion, stating that "as a matter of law" DNA testing was not available for evidence relating to punishment. This was affirmed on appeal. *Murphy v. State*, No. AP-77,112 (Tex. Crim. App., Sept. 26, 2023).

Mr. Murphy filed a complaint under 42 U.S.C. § 1983 in the United States District Court on September 26, 2023. This complaint raises a facial procedural due process challenge to Texas' postconviction and DNA testing procedures. On September 28th, he filed an opposed motion to stay his execution. On October 6, 2023, the district court granted a stay "to allow the Fifth Circuit adequate time to resolve the unique and serious legal issues raised in both *Gutierrez* and [Murphy's] complaint." ECF No. 16 at 6.

## SUMMARY OF THE ARGUMENT

Jedidiah Murphy filed an original Complaint under 42 U.S.C. § 1983 concerning his access to evidence in Appellant's control, in order to conduct DNA testing that could yield evidence that he is "innocent of the death penalty." The district court, applying controlling precedent from the United States Supreme Court and this Circuit, found a substantial likelihood of success on the merits of the suit, and granted a stay of execution in order to allow the action to proceed. Appellant asks this Court to vacate the stay of execution, arguing that the district court's grant of a stay was a "flagrant and egregious" abuse of its discretion. The district court's ruling is sound and supported, and this Court should not vacate it.

As an initial matter, Appellant does not invoke adequate appellate jurisdiction for this appeal. Appellee addresses this at the end of his brief.

As to the merits of Appellant's arguments, Appellee offers the following rebuttal. First, the district court was correct—and did not abuse its discretion—in finding that Mr. Murphy demonstrates a likelihood of success on the merits. A primary reason Mr. Murphy's district court found a likelihood of success was that another panel of this Court is currently reviewing the same important legal issues that Mr. Murphy raises. That panel heard oral argument two weeks ago and could decide them in his favor, just as a separate district court already did in that case.

Third, the district court was correct—and did not abuse its discretion—in finding that Mr. Murphy demonstrated he would suffer irreparable injury if his execution was allowed to proceed before his civil rights claims are adjudicated.

Fourth, the district court was correct—and did not abuse its discretion—in finding that the balance of equities weigh in favor of a stay. Appellant is wrong that the district court gave "short shrift" to the public interest by permitting Mr. Murphy to litigate his claims regarding access to critical DNA testing before he is executed. The district court did not give short shrift to the public interest when it decided that the likelihood of success on the merits, the irreparable harm Murphy would suffer in the absence of a stay, and the fact that the public also has a strong interest in the fair adjudication of important issues, outweighed the State's interest in seeing an execution go forward on its own schedule.

Finally, the district court did not violate the *Rooker-Feldman* doctrine by finding that Mr. Murphy's suit may succeed. Appellant's contrary argument is directly foreclosed by *Reed v. Goertz*, 143 S. Ct. 955 (2023).

Appellant has failed to demonstrate any error or abuse of discretion in the district court's analysis. This Court should deny his request to vacate the district court's stay.

# ARGUMENT

## A. Standard of Review for This Court's Consideration of the District Court's Grant of a Stay

Appellant accurately identifies the standard of review as abuse of discretion. "A district court abuses its discretion if it (1) relies on clearly erroneous factual findings or erroneous conclusions of law . . . or (2) misapplies the factual or legal conclusions[.]" *Cf. Texas v. United States*, 50 F.4th 498, 530 (5th Cir. 2022) (describing "abuse of discretion" standard for reviewing permanent injunctions).

Factual findings by the district court should not be disturbed unless clearly wrong. *Trudeaux*, No. 23-50132, 2023 U.S. App. LEXIS 25079, at *2 (quoting *Santos-Sanchez*, 548 F.3d at 330. "There is no clear error if the district court's finding is plausible in light of the record as a whole." *United States v. Harris*, 597 F.3d 242, 250 (5th Cir. 2010). This standard is highly deferential. *See Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 530 (5th Cir. 2020) ("A factual finding is clearly erroneous when, based on the evidence as a whole, we are 'left with the definite and firm conviction that a mistake has been made.'") (quoting *Cardoni v. Prosperity Bank*, 805 F.3d 573, 579 (5th Cir. 2015)).

Lastly, this Court should accept all of Mr. Murphy's well-pleaded facts as true, and view them in the light most favorable to him as the non-moving party. *Cf. Baker*, 75 F.3d at 196 (considering lift of preliminary injunction).

**B. The District Court Made a Factual Finding That Mr. Murphy's Desired DNA Testing Was Relevant To Disprove "What Might Be Regarded As The State's Strongest Evidence of Future Dangerousness."**

The District Court made the following factual finding, which should not be disturbed: "the evidence at issue in this writ pertains to what might be regarded as the State's strongest evidence of future dangerousness," the Wilhelm kidnapping testimony. Dkt. 16, p.5. As a direct result, the district court concluded that negation of Ms. Wilhelm's testimony would have affected Mr. Murphy's sentence. *Id.* ("it is difficult for this Court to conclude that the negation of this evidence would not have affected the jury's decision in the punishment phase.").

Factual findings are binding unless "clearly wrong." And these are not wrong; they easily meet the plausibility test. *Harris*, 597 F.3d at 250 ("no clear error if the district court's finding is plausible in light of the record as a whole.").

**C. Mr. Murphy's DNA Claim Raises a Substantial Case on the Merits**

Mr. Murphy raises "a substantial case on the merits" on a "serious legal question," and "the balance of the equities [] weighs heavily in the favor of granting a stay." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) (internal quotations and emphasis omitted). The "equities" are: irreparable injury; substantial injury to the other party; and public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009).[4] The

---

[4] The first *Nken* factor is normally whether the stay applicant is likely to succeed on the merits of his suit. In capital cases, this factor is seen as "a substantial case on the merits" instead. *O'Bryan*, 691 F.2d at 708. The district court in this case nonetheless did apply the first *Nken* factor as written,

district court applied all of this appropriate legal framework to the facts of Mr. Murphy's case, and decided a stay was warranted. This was a thoughtful – not abusive – exercise of discretion.

Appellant nonetheless urges this Court to vacate the district court's stay as an abuse of discretion for two reasons related to the first *Nken* factor. First, Appellant accuses the district court of erring because it found that Murphy had a likelihood of success on the merits by applying the law as it "might be, not as it is." Second, Appellant accuses the district court of violating the *Rooker/Feldman* doctrine. Neither is legally supported. The district court properly exercised its discretion in applying both law and facts to conclude Mr. Murphy demonstrated a substantial case on the merits, and a likelihood of success. Dkt. 16, at 5.

### a. The district court did not abuse its discretion by considering persuasive authority from another Federal District Court, and the pendency of an appeal to this Court on the exact same issue.

In asserting that the district court should have applied the law "as it is," Appellant ignores this Court's simultaneous consideration of the precise claim at issue: that Chapter 64's exclusion of punishment-related evidence is a barrier to a capital inmate's ability to show innocence of the death penalty under 11.071 § 5(a)(3) of the Texas Code of Criminal Procedure. This is the subject of *Gutierrez v.*

---

and found that Mr. Murphy showed the "requisite likelihood of success." Order Granting Stay, Dkt. 16 (Oct. 6, 2023), at 5.

*Saenz*, No. 21-70009, which was argued only two weeks ago after full briefing, submission of supplemental authority, and the panel's request for argument on an additional issue. In that case, as in this one, the defendant (Saenz) appealed; though instead of a stay, he is appealing declaratory relief on the merits issued by the U.S. District Court for the Southern District of Texas.

Appellant nonetheless argues that the district court erred by finding the identical issues raised in Mr. Murphy's § 1983 lawsuit to be worthy of further consideration. Although the opinion of the Southern District Court in *Gutierrez* was nonbinding upon the court in this case, it is nonetheless highly persuasive authority as to the merit of Mr. Murphy's identical claims.

Appellant urges this Court to vacate the district court's stay based on an assumption that the Southern District Court will be reversed, and Mr. Gutierrez will lose. But this Court cannot pre-judge the outcome of a separate case currently pending before a different three-judge panel.[5] Appellant argues that "a pending appeal of non-binding district court judgment from another judicial district" is an

---

[5] Reaching the merits of questions pending before another panel, in the context of ruling on a request to vacate a stay, could inadvertently bind the other panel that has spent considerably more time reviewing the same claims; or create conflicting decisions. The Fifth Circuit's choice to adopt the "rule of orderliness" indicates a respect between appellate panels that argues for avoiding either scenario. *Def. Distrib. v. Platkin*, 55 F.4th 486, 495 n.10 (5th Cir. 2022) ("The rule of orderliness means that one panel of our court may not overturn another panel's decision, absent an intervening change in law, such as by statutory amendment, or the Supreme Court, or our *en banc* court.") (citation omitted).*Cf. Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) ("The old Fifth followed the absolute rule that a prior decision of the circuit (panel or en banc) could not be overruled by a panel but only by the court sitting en banc."

insufficient basis from which the district court could have perceived the equitable propriety of a stay in this case. *Appellant's Brief* at 13. But this was a prudent exercise of the district court's discretion.

### b. Controlling authority from the United States Supreme Court holds that the district court did not violate the *Rooker/Feldman* doctrine.

Appellant insists that Mr. Murphy is trying to violate the *Rooker/Feldman*[6] doctrine. The Supreme Court recently ruled directly to the contrary. In *Reed v. Goertz*, 143 S. Ct. 955 (2023), Justice Kavanaugh writing for the Court explained:

> Texas contends that Reed's procedural due process claim contravenes the *Rooker-Feldman* doctrine. [] That doctrine prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments. But as this Court explained in *Skinner v. Switzer*, [562 U.S. 521 (2011),] even though a "state-court decision is not reviewable by lower federal courts,' a "statute or rule governing the decision may be challenged in a federal action." [] Here, as in *Skinner,* Reed does "not challenge the adverse" state-court decisions themselves, but rather "targets as unconstitutional the Texas statute they authoritatively construed." []

143 S. Ct. at 960-61 (internal citations omitted).

Appellant tries to argue that Mr. Murphy's claims in this case – despite being identically situated to Mr. Reed's and Mr. Skinner's – violate the *Rooker/Feldman* doctrine nonetheless. That is just not so, and Appellant's handful of attempts at attacking the district court's order on this basis all fail. Appellant criticizes the

---

[6] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

district court for failing to explain why Mr. Murphy's claims don't violate the *Rooker/Feldman* doctrine; but the district court was entitled to take the Supreme Court at its word in both *Skinner* and *Reed*. Appellant also criticizes the district court for using Mr. Murphy's name when discussing his facial constitutional challenge – arguing that this somehow turned the district court's analysis into one of an as-applied challenge, which would violate *Rooker/Feldman*. This is an unfaithful recasting of the district court's words, *Appellant's Brief* at 13-14, and identifies no genuine reason to find an abuse of discretion.

### D. The District Court Did Not Abuse Its Discretion When It Found that Murphy Demonstrated the Possibility of Irreparable Injury

The district court did not err in finding that second *Nken* factor – the possibility of irreparable injury – weighed heavily in Mr. Murphy's favor. Appellant wants Mr. Murphy to prove that, if he is successful in the present lawsuit, he would actually get the DNA testing he desires, the testing would definitely create exculpatory evidence, and the Texas courts would allow him to file a new habeas writ using that DNA evidence to prove his innocence of the death penalty. Appellant asserts that without such proof, Mr. Murphy cannot demonstrate any harm from forcibly abandoning his lawsuit (*i.e.*, irreparable injury).

Mr. Murphy does not need to prove any of that. In *Reed*, Justice Kavanaugh's opinion made crystal clear it was enough that a federal "court order [in Reed's favor] would eliminate the state prosecutor's justification for denying DNA testing," and it

would further be "'substantially likely' that the state prosecutor would abide by such a court order." 143 S. Ct. at 960 (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)). *Reed* further described this likelihood as: "a significant increase in the likelihood that the state prosecutor would grant access to the requested evidence[.]" *Id.*

Mr. Murphy also need not prove that the DNA results *will* be exculpatory.[7] Therefore, Appellant cannot win its argument that the district court abused its discretion for failing to "explain how DNA testing would . . . prove his innocence of the Wilhelm kidnapping." *Appellant's Brief* at 17. Not only is that a physical impossibility, but this Court's case law clearly does not require anything near that.

As for the state court permitting Mr. Murphy to pursue a new habeas petition based on DNA results relevant to the "future dangerousness" issue, Appellant argues that such basis is categorically barred from the successive state habeas process. Appellant argues that "future dangerousness" rebuttal evidence is, like mitigating evidence, merely persuasive evidence for the jury at sentencing. Thus, Appellant argues, "future dangerousness" evidence can never satisfy the requirements of Tex. Code Crim. Proc. art. 11.071 Section 5(a)(3) because it is a "discretionary" factor,

---

[7] Appellant argues that "the presence of another's touch DNA on [the evidence] would not be exculpatory given the 'ubiquity' of touch DNA." *Appellant's Brief* at 18. Mr. Murphy's complaint specifically alleged, however: "If an unidentified DNA profile is developed from the evidence, the State is [statutorily] required to run it through the FBI's CODIS Database, and a Texas DNA database." Complaint, Dkt. 6, para. 17 (citing Article 64.035). Thus, Mr. Murphy seeks DNA testing not merely to prove a negative – that his DNA is absent – but also to prove a positive – that someone else (with no connection to Mr. Murphy) committed the crimes.

rather than an eligibility factor. *Appellants's Brief* at 20-21 (citing *Rocha v. Thaler*, 626 F.3d 815 (5th Cir. 2010)). This betrays a fundamental misunderstanding of the "future dangerousness" special issue, which has been considered a constitutional eligibility – *not* discretionary – factor since 2002. *See, e.g., Ring v. Arizona*, 536 U.S. 584 (2002); *see also Blue v. State*, 125 S.W.3d 491, 501 (Tex. Crim. App. 2003) ("Where a finding of a fact . . . *increases the authorized punishment* for a crime, the State must prove and a jury must find that fact beyond a reasonable doubt. [] . . . there is no authorized increase in punishment contingent on the jury's finding on the mitigating special issue. . . . a jury's finding on mitigation occurs only after the State has proven the elements of capital murder, at the guilt stage, and the aggravating circumstances-evidence of the defendant's future dangerousness-beyond a reasonable doubt. [] By the time the jury reaches the mitigation issue, the State has already demonstrated the defendant's eligibility for a death sentence; a negative answer on mitigation cannot increase his authorized punishment.) For essentially the same reason, the *Rocha* case upon which Appellant so heavily relies exclusively concerned mitigating evidence, which is indeed a discretionary factor for the jury.

All of Appellant's arguments are red herrings, and demand too high a burden. All that is necessary is a "possibility" of irreparable injury: "In a capital case, the possibility of irreparable injury weighs heavily in the movant's favor . . . we must be particularly certain that the legal issues 'have been sufficiently litigated,' and the

criminal defendant accorded all the protections guaranteed him by the Constitution of the United States." *O'Bryan*, 691 F.2d at 708 (quoting *Evans v. Bennett*, 440 U.S. 1301, 1303 (Rehnquist, J., granting stay of execution)).

The district court below cited language from *O'Bryan*, as well as *Battaglia v. Stephens*, 824 F.3d 470, 475-6 (5th Cir. 2016), which held that in a capital case, "the possibility of irreparable injury weighs heavily in the movant's favor, especially when his claim has some merit." 824 F.3d at 475-6 (quotations omitted). The district court concluded that time was necessary for "the fair adjudication of the important issues raised . . . given the irrevocable harm that would result if this live issue were not first adjudicated by the courts." Dkt. 16 at 6. This considered conclusion was far from an abuse of discretion, under any formulation. It certainly did not rely on any erroneous legal conclusions, as it directly applied multiple governing authorities. *See Texas*, 50 F.4th at 530 ("A district court abuses its discretion if it . . . relies on clearly erroneous factual findings or erroneous conclusions of law[.]"). Its factual determinations are supported by the record, and thus not "clearly erroneous" either, *id.*; instead, they are "plausible in light of the record as a whole." *Harris*, 597 F.3d at 250. The district court did not abuse its discretion.

### E. The Balance of the *Nken* Factors Weighs Heavily in Mr. Murphy's Favor, and the District Court Did Not Abuse Its Discretion in So Finding

The remaining *Nken* factors weigh heavily in Mr. Murphy's favor, and the district court did not abuse its discretion in so finding. The district court considered

the "State's strong interest in enforcing its criminal judgments," Dkt. 16 at 6 (quoting *Crutsinger v. Davis*, 930 F.3d 705, 709 (5th Cir. 2019),  but ultimately found that "the public interest will best be served by allowing time for the fair adjudication of the important issues raised in Murphy's complaint, given the irrevocable harm that would result if this live issue were not first adjudicated by the courts." Dkt. 16 at 6. The Wilhelm kidnapping and Wichita Falls robbery that the State introduced as aggravators at the punishment phase of his trial were never charged, and no one was ever convicted of them. In addition to further exonerating Mr. Murphy of these uncharged crimes, DNA testing of the evidence obtained–the evidence Mr. Murphy seeks through postconviction DNA testing–could shed light on the actual perpetrator of these crimes and help bring them to justice.

## F. Appellant's Issue One is Unpreserved and Ignores Controlling Authority

Appellant's Issue One is unpreserved and should not be heard for the first time on appeal. Appellant argues, in its Issue One, that the district court "erroneously failed to apply an equitable presumption against a stay of execution" due to Appellant's assertion of delay. *Appellant's Brief* at 6, 7-11. Appellant unfairly attacks the district court for failing to employ this doctrine, which it argues should have resulted in a full scale denial of Mr. Murphy's stay. *Appellant's Brief* at 10 ("Yet the lower court erroneously did not apply the equitable presumption required[.]") (citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006)); *id.* at 10 ("The

lower court's disregard of such well-established precedent is clearly reversible error."); *id*. ("[T]his stay is thus a flagrant and egregious abuse of discretion.").

But Appellant failed to make this argument to the district court. In its opposition to Mr. Murphy's stay motion, it nowhere stated that *Hill* created a presumption that displaces the normal *Nken* factors. Under its heading about the public interest in carrying out Mr. Murphy's execution, it cited some of the same language from *Hill* to argue for a presumption that the *public interest factor* should weigh against Mr. Murphy. *Defendant's Response in Opposition to Plaintiff's Motion for Stay of Execution*, Dkt. 12, at 17-18. That did not put the district court on notice of the argument Appellant raises now, thus this Court should not consider it either. Beyond that, it is fundamentally impossible for the district court to have abused its discretion in failing to consider an argument Appellant failed to make.

Furthermore, in arguing that Mr. Murphy's action is dilatory, Appellant ignores controlling Supreme Court authority concerning whether Mr. Murphy had to wait until conclusion of his state-court processes before filing his federal action. Appellant errs by claiming he did not. *Appellant's Brief* at 9. To the contrary, as Justice Kavanaugh recently explained, invocation of state process may very well be necessary, even for a facial constitutional challenge like Mr. Murphy's:

> According to Reed, a plaintiff may forgo full appellate review in the state-court system and still bring a procedural due process suit challenging a State's post-conviction DNA testing law. [] As this Court indicated in

> *Osbourne*, it may be 'difficult' as a practical matter 'to criticize the State's procedures when [the prisoner] has not invoked them.' [] In any event we need not address that hypothetical scenario.

*Reed*, 143 S. Ct. at 961 n.1 (internal citations omitted). Following binding Supreme Court precedent does not make Mr. Murphy dilatory.

### G. Defendant Nasser Cannot Appeal This Interlocutory, Non-final Order

Appellant invokes this Court's appellate jurisdiction under 28 U.S.C. § 1292(a). That provision grants appellate jurisdiction over "[i]nterlocutory orders of the district courts of the United States . . . granting . . . injunctions[.]" § 1292(a) does not apply here, however, because the district court issued no injunction.

### a. Appellant has forfeited his legal argument that the district court's order is an injunction.

By invoking 28 U.S.C. Section 1292(a), Appellant argues that the district court issued an injunction. He did not raise this legal theory below, however. He did not ask the district court to provide any of the procedural or substantive requirements associated with an injunction. *See, e.g.,* Fed. R. Civ. P. 65 (setting procedural and substantive requirements for preliminary injunctions and temporary restraining orders). Neither party briefed any preliminary injunction issues below, and thus the district court did not rule on that subject. Appellant has thus forfeited the legal argument that the district court's order is an injunction.[8]

---

[8] *See e.g. Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 593 (5th Cir. 2006) ("This Court will not consider an issue that a party fails to raise in the district court absent extraordinary circumstances.")

### b. The district court did not issue an injunction.

Mr. Murphy's Complaint requests declaratory relief, and very specific injunctive relief against the named Defendants. Preliminary injunction of his execution was not included, as the prosecutor and police chief are not among the persons who *could* be effectively enjoined from carrying out an execution in Texas. Federal R. Civ. P. 65(d)(2) (preliminary injunction binds parties, their agents, and persons acting in concert with them).[9]

Instead, Mr. Murphy filed – and the district court granted – a Motion for Stay of Execution, invoking the district court's authority under *Nken*, 556 U.S. 418, to issue **stays**. And as the Supreme Court directly held in *Nken*, concerning a federal court's separate authorities to stay or enjoin alien removal proceedings, "the terms [stay and injunction] are by no means synonymous." *Id*. at 431. Invoking the authority of the "historic office" of issuing stays, the *Nken* Court rejected a statutory injunction procedure which would have frustrated the entire purpose of the stay,

---

(quoting *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999); *FDIC. v. Mijalis*, 15 F.3d 1314, 1326-27 (5th Cir. 1994) ("If a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court."). *See also Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

[9] Neither was permanent injunction of execution included, as that is not necessary to redress the injury. *Cf. Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022) (". . . a tailored injunction of the sort Ramirez seeks—rather than a stay of execution—will be the proper form of equitable relief when a prisoner raises a RLUIPA claim in the execution context. *Cf*. 18 U.S.C. §3626(a)(2) ("Preliminary injunctive relief [in a prison conditions suit] must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.")").

explaining that the injunction statute did "not resolve the dilemma stays historically addressed: what to do when there is insufficient time to resolve the merits and irreparable harm may result from delay." *Id*. at 432.

Chief Justice Roberts, who authored *Nken*, explained how important the stay authority is:

> It takes time to decide a case on appeal. Sometimes a little; sometimes a lot. "No court can make time stand still" while it considers an appeal, *Scripps-Howard Radio, Inc.* v. *FCC*, 316 U.S. 4, 9 (1942), and if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review. That is why it "has always been held, . . . that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Id.*, at 9-10 (footnote omitted). A stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it.

556 U.S. at 421-22.

Consistent with *Nken*'s independent and historical stay authority, the district court in this case clearly issued a stay, and not a preliminary injunction.

> ### c. The Order cannot be appealed under any jurisdictional theory as it is not final under 28 U.S.C. § 1291 nor does it satisfy the collateral order doctrine

Appellant has failed to raise any other basis for this Court's appellate jurisdiction. He has thus abandoned any such possible arguments. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal."). Should this Court independently examine other possible bases for jurisdiction over the district court's Stay Order, Mr. Murphy briefs

them below. To cut to the chase, this interlocutory order cannot properly be reviewed until an appeal from final judgment.

Except in the case of true injunctions, this Court's appellate jurisdiction typically comes from three sources: appeal of a final order, 28 U.S.C. § 1291; the collateral order doctrine; or issues certified by the district court for appeal pursuant to 18 U.S.C. § 1292(b). There is no § 1292(b) certification here; and the Stay Order meets the requirements of neither § 1291 nor the collateral order doctrine.

The Stay Order in this particular case is not "final" for purposes of § 1291 because it does not "end[] the litigation on the merits," *Clark v. Johnson*, 278 F.3d 459 (5th Cir. 2002); instead, it *begins* the litigation on the merits:

> The effect of the statute is to disallow appeal from any decision which is tentative, informal or incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal.

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The district court granted a stay of execution in order to permit litigation of constitutional claims. The matter is by definition still "open, unfinished, or inconclusive." *Id*.

Neither does the Stay Order satisfy the collateral order doctrine, which permits interlocutory review of orders that are: final *i.e.* "conclusive" rulings on "important questions separate from the merits" of the ultimate claims; and "effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995).

24

The Stay Order is not "conclusive." The district court's ruling is, by its nature, a preliminary ruling as to the possible merits of Mr. Murphy's suit. The district court found "a strong showing that he is likely to succeed on the merits," *Nken*, 556 U.S. at 434; but he ultimately could still lose. "To be appealable as a final collateral order, the challenged order must constitute 'a complete, formal and, in the trial court, final rejection,' [] of a claimed right[.]" *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 376 (1981) (quoting *Abney v. United States*, 431 U.S. 651, 659 (1977)). The Stay Order is not that.

Perhaps the biggest misfit between the collateral order doctrine and the Stay Order is this: the Order is not "collateral" to, or "separate" from, the merits of Mr. Murphy's lawsuit; they are one and the same. An interlocutory order meets this "separability" requirement only if it is a "claim[] of right separable from, and collateral to, rights asserted in the action, . . . too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546. "The requirement that the matter be separate from the merits of the action itself means that review *now* is less likely to force the appellate court to consider approximately the same (or a very similar) matter more than once."

*Johnson v. Jones*, 515 U.S. 304, 311 (1995). Far from being independent, the Order here is *based on* the merits of the action.[10]

Neither does the Stay Order raise any "important questions" aside from those of the underlying suit. To be "important," the legal question substantiating the interlocutory action must be "serious and unsettled." 925 F.2d at 134; *Nixon v. Fitzgerald*, 457 U.S. 731 (1982). The district court applied the well-settled *Nken* factors in a straightforward manner to Mr. Murphy's Motion for Stay. Nothing about this Order raises any "serious and unsettled" legal questions about a district court's authority to stay executions.[11]

Lastly, the district court's preliminary conclusion that Mr. Murphy could win his suit is not "unreviewable" on appeal from final judgment; it is the very same question that would be reviewed on appeal from final judgment. If Mr. Murphy does

---

[10] The district court's Order is not "collateral" to the merits of Mr. Murphy's suit under any linguistic formulation of this prong. *See Johnson*, 515 U.S. at 311 ("review *now* is less likely to force the appellate court to consider approximately the same (or a very similar) matter more than once"); *Cohen*, 337 U.S. at 546-47 ("not an ingredient of the cause of action"); *EEOC v. Kerrville Bus Co.,* 925 F.2d 129, 134 (5th Cir. 1991) ("The order must be separable from, and collateral to, rights asserted in the principal suit."); *id.* at 134 ("must finally dispose of a matter so that the district court's decision may not be characterizable as tentative, informal or incomplete.") The district court's Order here is instead "tentative" and "incomplete." *Id.* It is also "an ingredient of the cause of action," 337 U.S. at 546-47. Far from being "separable from, and collateral to, rights asserted in the principal suit," 924 F.2d at 134, it is a tentative holding directly on the rights asserted in the suit. It is simply not a collateral order.

[11] It may certainly be true that the claims raised in Mr. Murphy's Complaint are important, serious, and unsettled; but that is not part of the collateral order analysis. The "important"/"serious and unsettled" language is not a separate prong of the collateral order doctrine, but merely a modifier of the requirement that the subject matter be "separate from the merits" of the ultimate claims. *Swint*, 514 U.S. at 42 ("important questions separate from the merits" of the ultimate claims).

prevail in the end, Appellant can appeal pursuant to 28 U.S.C. § 1291 with the identical arguments he is making now.  This is not an instance "'where denial of immediate review would render impossible any review whatsoever[.]'" *Firestone*, 449 U.S. at 376 (quoting *United States v. Ryan,* 402 U.S. 530, 533 (1971)).

It is not good enough for Appellant to claim that the Stay Order burdens him in a way "only imperfectly reparable" by reversal after final judgment. That argument "has never sufficed":[12]

> Th[e] [unreviewability] prong is narrow [] because almost every . . . order might be called effectively unreviewable in the sense that relief from error can never extend to rewriting history. []. Accordingly, a non-final decision is not effectively unreviewable if it may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment.

*Tracy v. Lumpkin*, 43 F.4th 473, 476 (5th Cir. 2022) (internal quotations and citations omitted). Temporarily staying Mr. Murphy's execution to permit litigation is only "imperfectly reparable" because it doesn't prohibit the execution nor preclude Appellant's appeal of the merits.

Justice Gorsuch, when sitting on the Tenth Circuit Court of Appeals, published the following helpful analysis of why the collateral order doctrine may not be invoked when post-judgment review will ultimately be available – even when a pretrial issue should entitle a party to avoid a merits trial altogether:

---

[12] *Indus. v. Carpenter,* 558 U.S. 100, 107 (2009).

the fact that a district court may have erred in denying a defendant the benefit of a collateral legal entitlement that would and should have allowed him to avoid trial" is not enough; post-judgment appeal, while it "may afford the defendant only an 'imperfect[]' remedy . . . *some* meaningful review is available after trial — after all, an appellate court can still undo an unlawful conviction. [] And this, the Court has said, is generally all that's required or permitted by § 1291.

*United States v. Wampler*, 624 F.3d 1330, 1335-36 (10th Cir. 2010) (emphasis in original) (internal citation omitted). Thus, interlocutory appeal is unavailable for many issues that are considered "important" for other purposes.[13]

By way of comparison, certain immunity rulings based on questions of law, for instance, can be interlocutory reviewed under the collateral order doctrine because "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." *Mitchell v. Forsyth*, 472 U.S. 511, 527-28 (1985). However, interlocutory review is not available for a qualified immunity ruling that requires analysis of the same factual issues that will ultimately determine the merits of a case, because it is not "separate." *Johnson v. Jones*, 515 U.S. 304 (1995). Similarly, interlocutory review is unavailable to review a sanctions order against an attorney if it would "differ only marginally from an inquiry into the

---

[13] For example, immediate appeal is not permitted for claims of vindictive prosecution, *U.S. v. Hollywood Motor Car Co., Inc.*, 458 U.S. 263 (1982), speedy trial violations, *U.S. v. MacDonald*, 435 U.S. 850 (1978), or Fourth Amendment violations. *Di Bella v. U.S.*, 369 U.S. 121 (1962). All of these claims can be raised post-judgment. The *Digital Equipment* Court added these further examples of claims that may not be immediately reviewed: lack of personal jurisdiction; expired statute of limitations; action barred on claim preclusion grounds; judgment as a matter of law when no fact is in dispute; failure to state a claim. *Digital Equip. Corp. v. Desktop Direct*, 511 U.S. 863, 873 (1994).

merits" of the case. *Cunningham v. Hamilton County*, 527 U.S. 198, 206 (1999). Nor is it available to review denial of a motion to dismiss an action for *forum non conveniens,* which is a largely factual inquiry that in some cases "will substantially overlap factual and legal issues of the underlying dispute, making such determinations unsuited for immediate appeal as of right under § 1291." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988). This factual "entanglement" removes such an order from the ambit of the collateral order doctrine, even if the legal questions are distinct. *Id*. at 528. And the Supreme Court has been clear that this was so in *Van Cauwenberghe*, even though not all *forum non conveniens* motions would actually require such factual entanglement, explaining: "In fashioning a rule of appealability under § 1291, however, we look to categories of cases, not to particular injustices." *Id*. at 529 (citing cases).[14]

Since this Stay Order is not an injunction, and has not been certified for appeal, this Court lacks jurisdiction and should dismiss this appeal.

## CONCLUSION

Wherefore, Mr. Murphy respectfully requests that this Honorable Court dismiss or deny the present appeal, leaving the district court's Stay Order in place.

---

[14] *See also Cunningham*, 527 U.S. at 206 ("Perhaps not every discovery sanction will be inextricably intertwined with the merits, but we have consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral.") (citing cases).

Respectfully Submitted,

s/ Catherine Clare Bernard

Catherine Clare Bernhard
Texas Bar No. 02216575
P.O. Box 506
Seagoville, Texas 75159
972-294-7262
cbernhard@sbcglobal.net

Katherine Froyen Black
Texas Bar No. 24099910
205 Blue Ridge Trail
Austin, Texas 78746
415-847-6127
kfroyen@gmail.com

*Counsel for Mr. Murphy*

# CERTIFICATE OF SERVICE

I certify that on the 8th day of October, 2023, I served opposing counsel and Appellant Ali Nasser, electronically through ECF, with a true copy of this Appellee Brief.

s/ Catherine Clare Bernhard

*Counsel for Mr. Murphy*

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with word-count and page-count limits.

It contains 7,983 words, and consists of 29 pages.


s/ Catherine Clare Bernhard

*Counsel for Mr. Murphy*