No. 23-70005

IN THE

# United States Court of Appeals for the Fifth Circuit

ALI NASSER,

*Defendant–Appellant,*

v.

JEDIDIAH MURPHY,

*Plaintiff–Appellee.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division,
Cause No. 1:23–CV–1170

## REPLY IN SUPPORT OF MOTION TO VACATE STAY OF EXECUTION

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

ALI M. NASSER
Assistant Attorney General
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936–1400
Ali.nasser@oag.texas.gov

*Counsel for Defendant–Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Defendant–Appellant*
    Ali Nasser
    District Attorney Pro Tem

*Counsel for Defendant–Appellant*
    Ali Nasser, Assistant Attorney General
    OFFICE OF THE ATTORNEY GENERAL OF TEXAS

*Plaintiff–Appellee*
    Jedidiah Murphy

*Counsel for Plaintiff–Appellee*
    Catherine Bernhard
    Katherine Black
    Russell Hunt

                    s/ Ali M. Nasser
                    ALI NASSER
                    Assistant Attorney General
                    *Counsel for Defendant–Appellant*

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................i

TABLE OF CONTENTS ...........................................................................ii

TABLE OF AUTHORITIES.....................................................................iii

INTRODUCTION...................................................................................... 1

ARGUMENT ............................................................................................. 1

I.    Murphy Cannot Show that this Court Does not Have
      Jurisdiction............................................................................... 1

II.   Murphy Fails to Show that the District Court's Finding a
      Likelihood of Success on the Merits is Not an Abuse of
      Discretion. ................................................................................ 3

III.  The Lower Court's Finding of Irreparable Injury Was
      Erroneous. ................................................................................ 6

IV.   Murphy Still Cannot Justify His Egregious and Abusive
      Delay.......................................................................................... 9

CONCLUSION ....................................................................................... 12

CERTIFICATE OF SERVICE................................................................ 14

CERTIFICATE OF COMPLIANCE WITH RULE 27(d)....................... 15

CERTIFICATE OF COMPLIANCE WITH ECF FILING
STANDARDS ......................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012) .........................................2

*Cantu v. Collins*, 967 F.2d 1006 (5th Cir. 1992) .....................................3

*Def. Distrib. v. Platkin*, 55 F.4th 486 (5th Cir. 2022) ..............................4

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). 5

*Gutierrez v. Saenz*, 131 S. Ct. 1260 (2021)................................................8

*Gutierrez v. Saenz*, 818 F. App'x 309 (5th Cir. 2020) ...........................2, 8

*Haaland v. Brackeen*, 142 S. Ct. 1609 (2023) .........................................7

*Hill v. McDonough*, 547 U.S. 573 (2006)................................................11

*Lowenfield v. Phelps*, 484 U.S. 231 (1988)...............................................9

*Murphy v. State*, No. AP-77,112, 2023 WL 6241994 (Tex. Crim. App. Sep. 26, 2023) ................................................................................12

*Nken v. Holder*, 556 U.S. 418 (2009).........................................................3

*Ramirez v. McCraw*, 715 F. App'x 347 (5th Cir. 2017)............................6

*Reed v. Goertz*, 598 U.S. 230 (2023) .........................................................4

*Rocha v. Thaler*, 626 F.3d 815 (5th Cir. 2010).........................................9

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ...................................5

*Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341 (5th Cir. 2016) ...............3

*United States v. Salerno*, 481 U.S. 739 (1987)..........................................5

*Utah v. Evans*, 536 U.S. 452 (2002) .........................................................6

**Statutes**

28 U.S.C. § 1292(a) ..................................................................................1

## INTRODUCTION

Plaintiff-Appellee Jedidiah Murphy obtained a stay of execution so that he could pursue his civil-rights challenge to Texas's DNA-testing statute under Chapter 64 of the Texas Code of Criminal Procedure. Appellant immediately moved in this Court to vacate the stay. Mot. to Vacate (Mot.). Murphy has responded. *See* Response (Resp.).

In his response, Murphy fails to explain (1) how his claim has any merit, (2) how he could ever obtain DNA testing and (3) why he has waited until nearly the eve of execution to raise his lawsuit. In granting Murphy's stay request, the lower court ignored these deficiencies, further delaying justice so that Murphy could present a meritless and pointless lawsuit that he could have brought anytime over the last decade. In doing so, the lower court abused its discretion.

## ARGUMENT

## I.    Murphy Cannot Show that this Court Does not Have Jurisdiction.

Murphy contends that the lower court did not issue an injunction and therefore Appellant's reliance on 28 U.S.C. § 1292(a) to invoke jurisdiction is improper. While an order granting a stay of execution is

1

not an injunction per se, it in effect prescribes injunctive relief. In any event, Murphy cannot credibly say that this Court lacks jurisdiction to vacate an order granting a stay of execution. Opinions from this Court ruling on such orders are legion. *See, e.g., Adams v. Thaler*, 679 F.3d 312, 323 (5th Cir. 2012). So legion, in fact, that this Court's internal operating procedures have a rule designed just for a motion to vacate such an order. *See* Rule 8.3 of the Rules and Internal Operating Procedures of the United States Court of Appeals for the Fifth Circuit. And even assuming Appellant is correct that § 1292 does not imbue this Court with jurisdiction because the lower court did not issue an injunction, this Court has previously exercised jurisdiction even without an injunction in place to vacate a stay of execution. *See Gutierrez v. Saenz*, 818 F. App'x 309, 311, 315 (5th Cir. 2020); *Adams*, 679 F.3d at 323.

Murphy's last argument, that a court order granting a stay of execution does not satisfy the collateral order doctrine, also fails. The collateral order doctrine permits appeals from orders that are deemed final under 28 U.S.C. § 1291 because they "(1) conclusively determine the disputed question; (2) resolve an issue that is completely separate from

the merits of the action and (3) would be effectively unreviewable on appeal from a final judgment." *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 345 (5th Cir. 2016). A stay of execution clearly fits this definition. It conclusively determines the question of whether a stay of execution would be granted. It is clearly separate from the merits of the action. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). And obviously the question of whether to stay an execution would be unreviewable if the order staying the execution were unappealable. Therefore, an order granting stay of execution would meet the requirements of the collateral order doctrine.

## II.     Murphy Fails to Show that the District Court's Finding a Likelihood of Success on the Merits Is Not an Abuse of Discretion.

As Appellant pointed out in his motion to vacate, Circuit precedent precludes granting a stay of execution pending a writ of certiorari that might change the law. *Cantu v. Collins*, 967 F.2d 1006, 1012 n. 10 (5th Cir. 1992). Drawing a commonsensical syllogism, it therefore follows that a pending appeal should have no greater effect. Not so, says Murphy. Instead, of failing to engage with Appellant's rational argument, he

continues pointing to the pending *Gutierrez*[1] appeal, arguing that the Southern District's opinion is "highly persuasive authority." Resp. at 13. But certainly four Supreme Court justices voting to grant certiorari on an issue is "highly persuasive" as well. If that is not enough to stay an execution, neither is an allegedly "persuasive" district court opinion.[2]

Murphy also misapprehends the lower court's determination of the merits of his claim. He argues that, under *Reed v. Goertz*, the lower court was permitted to find his complaint did not violate the *Rooker/Feldman* doctrine. Resp. at 14 (citing to 598 U.S. 230, 234–35 (2023)). Murphy misapprehends the difference between standing and merits. Indeed, *Reed* held that one raising a facial challenge could show injury to support Article III standing. *Reed*, 598 U.S. at 235. But Murphy *cannot* argue

---

[1]    *See Gutierrez v. Saenz*, No. 21-70009

[2]    Appellant further makes a flimsy appeal to the rule of orderliness, claiming that this Court cannot prejudge the merits of the appeal in *Gutierrez* by finding he cannot show a likelihood of success on the merits. As Murphy notes, under the rule of orderliness, a panel cannot overturn "another panel's decision absent an intervening change in law, such as by statutory amendment, or the Supreme Court, or our *en banc* Court." *Def. Distrib. v. Platkin*, 55 F.4th 486, 495 n.10 (5th Cir. 2022). Nothing about that rule precludes a panel from evaluating the same issue as the panel in *Gutierrez*. To the extent Murphy laments that he won't be able to see what happens in *Gutierrez* without a stay of execution, that is his fault alone for waiting over a decade to file his lawsuit.

such injury for purposes of the merits of his claim without violating the *Rooker/Feldman*[3] doctrine. The moment a plaintiff begins citing to *his own injury* on the merits to show an unconstitutional application, he by definition is making an impermissible as-applied challenge. *See Reed*, 598 U.S. at 235 (explaining that the *Rooker/Feldman* doctrine "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments.").

Nothing in *Reed*'s discussion of standing permitted the lower court's consideration of how the statute might have violated Murphy's rights alone. Rather, as Appellant argued, the lower court needed to analyze whether Chapter 64 was unconstitutional in *all applications*. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). The lower court's order was completely lacking of this analysis. *See* ECF No. 16 And, glaringly, so is Murphy's current response. Resp. at 14–15. The silence from Murphy on the actual merits of his claim is deafening.

---

[3]     *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

## III. The Lower Court's Finding of Irreparable Injury Was Erroneous.

Murphy argues that, if he wins his lawsuit, it is more likely that Appellant would provide DNA testing. In support, he offers *Reed*'s opinion, stating that if "a federal court concludes that Texas's post-conviction DNA testing procedures violate due process, [such] that [a] court order would eliminate the state prosecutor's justification for denying DNA testing," finding that, "[i]t is 'substantially likely' that the state prosecutor would abide by such a court order." 598 U.S. at 234 (citing *Utah v. Evans*, 536 U.S. 452, 464 (2002)).

First, Murphy still fails to explain how the lower court could ever enjoin Appellant from taking a position or denying discretionary testing. It would be highly improper for a lower court to do so. *See Ramirez v. McCraw*, 715 F. App'x 347, 350 (5th Cir. 2017) (finding the district court "accurately analyzed" the plaintiff's request for "an injunction requiring the defendants to release the biological material on which he asks for DNA testing" as tantamount to an impermissible writ of mandamus). To the extent Murphy is arguing that Appellant might be *persuaded* by a powerless declaratory judgment, that argument fails as well, as

explained by the Supreme Court *after Reed*: "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Haaland v. Brackeen*, 142 S. Ct. 1609, 1640 (2023).

Moreover, the language in *Reed* was premised on a "court order [that] would eliminate the state prosecutor's justification for denying DNA testing." *Reed*, 598 U.S. at 234. As Appellant argued in his motion, the requested relief here *would not* eliminate Appellant's justification for denying DNA testing, because, even assuming Murphy won his lawsuit, the Appellant could continue to oppose testing on the ground that Murphy seeks it for delay. Tellingly, Murphy has no response to this rather dispositive argument.

Murphy also argues that "this Court's case law does not require" him or the lower court to explain how DNA testing would prove his innocence of the Wilhelm kidnapping. Resp. at 16. But, in the stay context, this Court has found it appropriate to inquire just how DNA testing would serve the plaintiff:

> The problem for Gutierrez is that he was convicted without jurors needing to decide whether he was the actual

murderer or an accomplice. He confessed to being inside the home. The jury was permitted to find Gutierrez guilty "of capital murder if, among other things, it found that appellant 'acting alone or as a party' with the accomplice intentionally caused the victim's death." . . . A search for DNA on the victim's clothing and elsewhere would not reasonably lead to evidence that would exclude Gutierrez as an accomplice. In his briefing before this court, he wholly failed to show how the DNA testing he requests would be "sufficiently material" to negate his guilt thus justifying the pursuit of DNA testing at this late date. Therefore, because Gutierrez has not shown by a preponderance of the evidence that he would not have been convicted if exculpatory results were obtained, he cannot prevail.

Gutierrez failed to show that the Court of Criminal Appeals' application of Chapter 64 as to him was fundamentally unfair. We conclude that Chapter 64 both facially and as applied by the Court of Criminal Appeals comports with the Supreme Court's decision in *Osborne*. Consequently, this claim is likely to fail on the merits and cannot justify a stay of execution.

*Gutierrez*, 818 F. App'x at 312–13, *vacated on other grounds by Gutierrez v. Saenz*, 131 S. Ct. 1260, 1261 (2021). If Murphy cannot explain how touch DNA would help him, that is a reason to find against him, not for him.

Murphy also argues that rebutting the future danger finding renders one ineligible for the death penalty under Texas law, accusing Appellant of betraying a "fundamental misunderstanding" of the special

issue. Resp. at 17. But the Supreme Court explained in *Lowenfield v. Phelps*, that Texas's scheme determines eligibility for the death penalty at the *guilt phase* of trial, not sentencing. *Lowenfield v. Phelps*, 484 U.S. 231, 243–47 (1988). And this Court adopted this rationale in *Rocha* when it determined that mitigating evidence that the jury heard after it had determined the defendant's guilt of a capital crime did not bear on eligibility for the death penalty. *Rocha v. Thaler*, 626 F.3d 815, 826–27 (5th Cir. 2010).

Murphy does not respond to the argument that he cannot show no rational juror could find him a future danger if could rebut the Wilhelm kidnapping. He could not make such a showing. And the lower court's failure to inquire into any injury Murphy would suffer absent a stay was an abuse of discretion.

## IV. Murphy Still Cannot Justify His Egregious and Abusive Delay.

Murphy argues that Appellant waived his argument that Murphy's delay created a presumption in favor of denying a stay:

> But Appellant failed to make this argument to the district court. In its opposition to Mr. Murphy's stay motion, it nowhere stated that *Hill* created a presumption that

displaces the normal *Nken* factors. Under its heading about
the public interest in carrying out Mr. Murphy's execution, it
cited some of the same language from *Hill* to argue for a
presumption that the *public interest factor* should weigh
against Mr. Murphy. *Defendant's Response in Opposition to
Plaintiff's Motion for Stay of Execution*, Dkt. 12, at 17-18. That
did not put the district court on notice of the argument
Appellant raises now, thus this Court should not consider it
either. Beyond that, it is fundamentally impossible for the
district court to have abused its discretion in failing to
consider an argument Appellant failed to make

Resp. at 20. That is a breathtaking misrepresentation of Appellant's

district court response. Appellant argued in the lower court that,

> [A] "court considering a stay must also apply 'a strong
> equitable presumption against the grant of a stay where a
> claim could have been brought at such a time as to allow
> consideration of the merits without requiring entry of a stay.'"

> . . .

> This presumption applies with full force here. Plaintiff
> has denied the Wilhelm kidnapping since trial . . Moreover,
> "Chapter 64, authorizing motions for DNA testing, has been
> in effect since April 2001." . . . Yet, Plaintiff did not move for
> DNA testing until March 2023, after the trial court set a
> hearing on the State's motion to set an execution date . . . And
> then he did not file his federal lawsuit in this court until
> September 27, 2023, less than two weeks from his execution.

> . . .

> As such, this lawsuit—belatedly filed less than two
> weeks before the execution—is precisely the sort of "dilatory

tactic" that presumptively weighs against the issuance of a stay.

ECF No. 12 at 18 (citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). The language used by Appellant clearly evinced a presumption against a stay, that trumps the other stay factors, and Murphy's argument that the lower court was not on notice of such an argument is simply not true.

In his second argument, Murphy cites to language from *Reed*, in which the majority suggests it "might be difficult as a practical matter" to bring a § 1983 lawsuit without testing the challenged state-court process first. 598 U.S. at 237 n.1. Murphy calls this "binding Supreme Court precedent." But it's actually dicta, as is clear from the majority's determination that "we need not address that hypothetical scenario." *Id*. Contrary to Murphy's erroneous argument, there is no binding Supreme Court precedent that would have restrained him from filing his § 1983 claim at any time. In fact, since he raises a facial challenge to a statute based on a 2011 opinion, Appellant fails to see how it would be difficult at all to have raised his claim "as a practical matter." Murphy doesn't even bother trying to explain why this would have been difficult. He just continues to flounder for an excuse to justify his delay.

11

In any event, even if he did have to wait for the CCA's judgment denying DNA testing to file his federal lawsuit, that judgment only issued so near his execution date because he delayed in filing his Chapter 64 motion, only moving for such relief when the State sought an execution date. *See Murphy v. State*, No. AP-77,112, 2023 WL 6241994, at *5. (Tex. Crim. App. Sep. 26, 2023). Murphy is silent on why he waited two decades to seek such testing.

The lower court clearly abused its discretion in failing to even mention Murphy's egregious and abusive delay.

## CONCLUSION

For the above reasons, the Defendant-Appellant requests that this Court vacate the district court's order staying Murphy's execution.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

12

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Ali Nasser

*Attorney-in-charge                 *ALI NASSER
Assistant Attorney General
District Attorney Pro Tem
Texas Bar No. 24098169

P. O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936–1400
Fax: (512) 320–8132
Email: Ali.Nasser@oag.texas.gov

ATTORNEYS FOR APPELLANT

13

## CERTIFICATE OF SERVICE

I do hereby certify that on October 8, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following attorney of record, who consented in writing to accept the NEF as service of this document by electronic means:

Catherine Clare Bernhard
Law Office of Catherine Clare Bernhard
P.O. Box 506
Seagoville, TX 75159
972-294-7262
Fax: 972-421-1604
Email: cbernhard@sbcglobal.net

Katherine Froyen Black
Attorney At Law
205 Blue Ridge Trail
Austin, TX 78746
415-847-6127
Email: kfroyen@gmail.com

Russell David Hunt, Jr.
Russell D. Hunt, Jr. Attorney at Law
310 South Austin Avenue
Georgetown, TX 78626
(512)474-5114
Fax: (512)857-0746
Email: admin@russhuntjrlaw.com

s/ Ali Nasser
ALI NASSER
Assistant Attorney General

**CERTIFICATE OF COMPLIANCE WITH RULE 27(d)**

I certify that this motion complies with the typeface and length requirements of Federal Rule of Appellate Procedure 27(d). It contains 2,510 words, Microsoft Word for Office 365, Century Schoolbook, 14 point font.

s/ Ali Nasser
*ALI NASSER
Assistant Attorney General

**CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARDS**

I do hereby certify that: (1) all required privacy redactions have been made; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus scanning program and is free of viruses.

s/ Ali Nasser
ALI NASSER
Assistant Attorney General